

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR–15–229

| | |
|---|---|
| | **Opinion Delivered:** May 24, 2017 |
| KENYON WAYNE TAYLOR<br>APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CR-14-229] |
| V. | |
| | HONORABLE JOHN HOMER WRIGHT, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Appellant Kenyon Taylor appeals his conviction by a Garland County jury of one count of murder in the first degree, one count of battery in the first degree, and a firearm enhancement, for which he received an aggregate sentence of fifty-five years' imprisonment in the Arkansas Department of Correction (ADC).[1] He challenges the sufficiency of the evidence supporting his convictions and also alleges that the trial court erred in suppressing evidence of the victim's intoxication. We affirm.

---

[1]On July 24, 2015, Taylor's attorney filed a no-merit brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Arkansas Supreme Court Rule 4-3(k)(1) (2015), seeking to withdraw as counsel. On November 4, 2015, appellant filed pro se points pursuant to Rule 4-3(k)(2), raising several issues for this court to consider on appeal. On December 11, 2015, the State responded to appellant's pro se brief. On June 22, 2016, this court denied Taylor's counsel's motion to withdraw and ordered rebriefing due to counsel's failure to abstract and discuss all adverse rulings in compliance with Rule 4-3(k). *Taylor v. State*, 2016 Ark. App. 347, at 3. The case is now before us as a merit appeal.

SLIP OPINION

## I. *Facts*

Appellant initially was charged with first-degree murder and criminal attempt to commit first-degree murder; however, at trial, the State timely amended the criminal-attempt charge to battery in the first degree. The evidence at trial indicates that appellant was tried on a theory of accomplice liability—with his brother, Jacorei Thornton, viewed as the alleged principal. At trial, the following evidence was adduced. Juan Manuel Santiago testified that on June 23, 2012, he, along with his friends, victim R.J. Shinkle, and Shinkle's girlfriend, Tammy Hunter, were drinking and hanging out at Shinkle's house. Shinkle called Bryce Lewis and asked him to come hang out with them. Lewis came to Shinkle's house with his girlfriend, Christi Myers, Larell (last name unknown) "Rell," and appellant, who was known as "Too Easy."

While at Shinkle's house, they all went into Shinkle's bedroom where he showed off an antique beer sign that he thought he could sell for eight hundred dollars. Everyone commented about the sign, and Shinkle became angry and slapped appellant. Appellant grabbed Santiago's arm and asked if Shinkle was serious. Santiago said that Shinkle was mad that no one was on his side and told everyone to get out of his house. After everyone had left, Santiago and Shinkle went to a store to get cigarettes. Lewis, who was still with appellant, testified that appellant was angry about having been slapped, and while in the car, he called someone on the phone and kept telling that person to meet him somewhere. Lewis dropped appellant off and went to another friend's house.

Detective Scott Lampinen of the Hot Springs Police Department ("HSPD") testified that cell-phone records confirmed that appellant had called his brother, Thornton, seven

times from 11:44 p.m. on June 23 to 12:05 a.m. on June 24. A little after 12:00 a.m., appellant called Lewis from Thornton's phone and told him to tell Shinkle to come outside because he wanted to fight him. Lewis told appellant that he was not going to tell Shinkle that. Lewis tried to call Shinkle but accidentally dialed Hunter, Shinkle's girlfriend, and told her to tell Shinkle to call him. Shinkle called Lewis back, who then told Lewis that appellant was looking for him and wanting to fight; Lewis refused to fight. Appellant called Lewis later, between 2:00 a.m. and 2:30 a.m., from Thornton's phone and said, "Yeah, I handled that." There was not another phone call between appellant and Thornton until 3:17 a.m., after Shinkle had shot and killed.

At some point during that time period, Santiago and Shinkle returned from the store, and when they parked, Santiago saw two black males, one large and one small, on a motorcycle or scooter. Shinkle got out of his truck and went to the front where the two males began shooting. Santiago was shot in the arm and ran toward his house.

Detective Patrick Langley with the HSPD testified that on the night of June 24, 2012, he was dispatched to the scene. Upon his arrival, he observed Shinkle lying in the roadway with blood flowing around his head. Dr. Stephen Erickson, deputy chief medical examiner for the Arkansas State Crime Lab ("ASCL"), testified that Shinkle had been shot with a gun from a very close range of less than one inch and had multiple pistol-whipping-pattern injuries on his head. Dr. Erickson told investigators about Shinkle's being pistol-whipped repeatedly. Shinkle bled out very quickly and profusely and died soon after being shot. Santiago was shot in the arm and was left with a scar.

Both Shinkle and Santiago had been shot with HPR nine-millimeter bullets, which Rebecca Mullen, from the ASCL firearm and tool-mark section, explained was an uncommon brand. A nine-millimeter gun was found between two couches at Thornton's house loaded with the uncommon HPR nine-millimeter ammunition two days after the murder. A motorcycle was recovered pursuant to a search warrant at Thornton's house, along with clothing that contained particles of gunshot residue. Finally, Tempest Snell testified that appellant and Thornton were discussing someone getting pistol-whipped and "stomped" at Thornton's residence after the crime had occurred. Snell signed a statement two days after Shinkle had been killed stating that appellant and Thornton were talking about pistol-whipping someone who slapped appellant earlier that night.

Defense counsel moved for a directed verdict at the close of the State's case-in-chief. The defense put on no theory or witness but made a renewal of the directed-verdict motion. Both motions were denied by the trial court. The jury convicted appellant on all counts and sentenced appellant to fifty-five years in the ADC. The sentencing order was filed on September 26, 2014, with an amended sentencing order filed on October 2, 2014. Appellant timely appealed the amended sentencing order on October 22, 2014.

II.  *Sufficiency of the Evidence*

A.  Standard of Review and Applicable Law

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Ealy v. State*, 2017 Ark. App. 35, 511 S.W.3d 355. We affirm a conviction if substantial evidence exists to support it. *Id*. Substantial evidence is that which is of sufficient force and

character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* On appeal, we consider only the evidence that supports the verdict, viewing the evidence in the light most favorable to the State. *Ressler v. State*, 2017 Ark. App. 208, __ S.W.3d __. We do not weigh the evidence presented at trial, as that is a matter for the fact-finder. *Id.* Witness credibility is an issue for the fact-finder, who is free to believe all or a portion of any witness's testimony and whose duty it is to resolve questions of conflicting testimony and inconsistent evidence. *Id.*

Substantial evidence can be either direct or circumstantial. *Chatmon v. State*, 2015 Ark. 28, 467 S.W.3d 731. Direct evidence is evidence that proves a fact without resorting to inference, such as when a witness testifies as to what he saw, heard, or experienced. *Id.* Circumstantial evidence is evidence from which a fact may be inferred. *Id.* Evidence of guilt is not less because it is circumstantial. *Id.* Further, circumstantial evidence may constitute substantial evidence to support a conviction. *Holland v. State*, 2017 Ark. App. 49, 510 S.W.3d 311.

In cases in which accomplice liability is implicated, there must be substantial evidence that a defendant acted as an accomplice in the commission of an alleged offense. *Green v. State*, 2013 Ark. 497, 430 S.W.3d 729. A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, the person solicits, advises, encourages, or coerces the other person to commit the offense or aids, agrees to aid, or attempts to aid the other person in planning or committing the offense. Ark. Code Ann. § 5-2-403(a)(1)(2) (Repl. 2013). Under the accomplice-liability statute, a defendant may properly be found guilty not only of his own

conduct, but also the conduct of his accomplice; when two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Green*, 2013 Ark. 497 at 7, 430 S.W.3d at 737. There is no distinction between principals on the one hand and accomplices on the other, insofar as criminal liability is concerned. *Id.*

Upon review, this court determines whether the jury resorted to speculation and conjecture in reaching its verdict and affirms where the record reveals that substantial evidence sustains the verdict. *Sales v. State*, 374 Ark. 222, 289 S.W.3d 423 (2008).

### B. Procedural Issue

A threshold determination is preservation of a sufficiency challenge. To preserve a sufficiency-of-the-evidence challenge on appeal, a timely, clear, and specific motion for directed verdict must be made to the trial court. *Williamson v. State*, 2009 Ark. 568, 350 S.W.3d 787 (citing Ark. R. Crim. P. 33.1(c)). Appellant claims that such a motion was made in this case, and even though not required, a renewed motion was made after appellant had put on no evidence. Despite the State's assertion that appellant's sufficiency argument is barred because he moved generally for a directed verdict but not as to the specific elements of the crimes for which he was convicted, we hold that his motions were sufficiently specific to call to the trial court's attention the alleged defect in the evidence.

Defense counsel stated in his initial motion that nobody saw appellant or his brother at the scene of the murder and likewise noted that there was no physical evidence placing them at the scene. He called to the trial court's attention that the only physical evidence at the scene pointed to a third party who committed the act and who was not appellant or his

brother. Finally, he argued that there was no link that put appellant or his brother at the scene of the crime with a gun. In his renewed motion, the argument was again made that there was no physical evidence to connect appellant or his brother to the crimes; the motorcycle alleged to have been used in the murder provided no physical evidence of the crimes; and there was no connection of appellant or his brother to the victims' injuries.

The test for a sufficiently supported directed-verdict motion is whether the motion points to any specific flaws in the State's case or identifies any elements of the criminal acts that had not been proved. *Pinell v. State*, 364 Ark. 353, 219 S.W.3d 168 (2005); *see also Elkins v. State*, 374 Ark. 399, 288 S.W.3d 570 (2008). Unlike the motions in *Pinell* and *Elkins*, appellant's arguments in support of his motions pointed out the lack of evidence and that the State had failed to exclude every other reasonable hypothesis than his guilt in the crimes. Accordingly, we hold that they were sufficient to preserve the issue for review.

## C.  Discussion

Appellant argues that the evidence at trial was all circumstantial and failed to exclude other reasonable hypotheses other than guilt. Appellant notes that no witness could identify either his brother, Thornton, the alleged principal, or him at trial, or even the basic elements of their appearances. Neither eyewitness, Hunter or Santiago, could identify appellant or the shooter, even though both clearly saw appellant hours before the shooting when he left Shinkle's house.

Appellant submits that there was no physical evidence, such as blood, DNA, fingerprints, ballistics, or tool marks linking appellant and Thornton to Shinkle or Santiago. He claims that the only evidence presented that supported the theory that appellant or

Thornton took some action against Shinkle was that (1) appellant seemed shocked after Shinkle had slapped him; (2) he called Thornton; (3) he called Bryce Lewis wanting to fight Shinkle; (4) he called Lewis back later saying he "handled it"; and (5) Snell overheard someone telling someone else that Shinkle had been stomped and whipped, but not by appellant or Thornton. Appellant submits that there were multiple theories that were inconsistent with his guilt or the commission of a criminal act by Thornton—the clearest and most plausible being that someone else killed Shinkle. Appellant points out that there was unidentified DNA at the scene. Likewise, the murder weapon was never found, even though law enforcement seized multiple guns from appellant and Thornton.

He reiterates the longstanding rule in the use of circumstantial evidence that to be substantial, the evidence must exclude every other reasonable hypothesis other than the guilt of the accused. *Sales*, *supra*. While appellant acknowledges that the question of whether the circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the jury to decide, *see Sales*, *supra*, he notes that evidence of guilt is not substantial if the jury must engage in speculation or conjecture about who caused the death of the victim. *See id*.

Accomplice liability may be shown by circumstantial evidence without direct proof of a conspiracy agreement. *See Purifoy v. State*, 307 Ark. 482, 822 S.W.2d 374 (1991). When a case is based on circumstantial evidence, relevant circumstances in determining the connection of an accomplice with a crime include the presence of the accused in the proximity of a crime, opportunity, and association with a person involved in the crime in a

manner suggestive of joint participation. *Thomas v. State*, 330 Ark. 442, 954 S.W.2d 255 (1997).

Under Arkansas Code Annotated section 5-10-102 (Repl. 2013), a person commits murder in the first degree if acting alone or with another person he causes the death with a purpose of causing death to another person. Additionally, under Arkansas Code Annotated section 5-13-201(a)(1), a person commits battery in the first degree if with the purpose of causing serious physical injury to another person, the person causes serious physical injury to any person by means of a deadly weapon. Considering only the evidence that supports the verdict and viewing the evidence in the light most favorable to the State, we hold that the evidence presented was sufficient to show that appellant, acting with Thornton, purposely shot and killed Shinkle and shot and injured Santiago.

It is undisputed that Shinkle was less than one inch away from the gun that killed him when it was fired, subsequent to him having been pistol-whipped multiple times on both sides of his head. After Shinkle had been killed, Snell heard appellant and Thornton talking about pistol whipping someone, and she signed a statement two days after Shinkle had been killed that indicated that appellant and Thornton had been talking about pistol-whipping someone who had slapped appellant earlier on the night that Shinkle was killed. The investigator did not know about the pistol-whipping until Dr. Erickson conducted his autopsy and phoned to tell him. Further, it is undisputed that Santiago was shot in the arm by a firearm, which is a deadly weapon, even if it has faulty ammunition that could not inflict serious injury. *See Mitchell v. State*, 290 Ark. 87, 717 S.W.2d 195 (1986).

We hold that the State presented sufficient evidence to show that appellant and Thornton were working together when Shinkle and Santiago were shot. The multiple phone calls from appellant to and from Thornton on the evening of June 23, 2012, and the morning of June 24, 2012, along with appellant's call to Lewis from Thornton's phone shortly after the shooting indicating that he had "handled" the matter, and Snell's testimony about appellant and Thornton discussing the pistol-whipping incident provided substantial circumstantial evidence from which the jury could base its findings of appellant's guilt.

III.  *Suppression of Victim's Intoxication*

A.  Standard of Review and Applicable Law

A trial court's ruling on the admission of evidence of other crimes is entitled to great weight and will not be reversed absent an abuse of discretion. Ark. R. Evid. 404(b) (2016). *See Williams v. State*, 2016 Ark. App. 507, 505 S.W.3d 234. This high threshold does not simply require a demonstration of error in the court's decision but rather a demonstration that the trial court acted improvidently, thoughtlessly, or without due consideration. *Williams v. State*, 374 Ark. 282, 287 S.W.3d 559 (2008). Evidentiary rulings will also not be reversed absent a showing of prejudice. *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001).

Arkansas Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence which is not relevant is not admissible. Ark. R. Evid. 402. Even if evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ark. R. Evid. 403.

B. Discussion

Appellant argues that alternate theories consistent with his innocence were improperly masked by the trial court's suppression of Shinkle's intoxication as irrelevant during the guilt phase. He maintains that evidence proffered at trial indicated that Shinkle was substantially intoxicated by alcohol and methamphetamine. While acknowledging that evidence of intoxication may be more prejudicial than probative in certain circumstances, appellant maintains that Shinkle's strange behavior caused by his intoxication bolstered the fact that someone else may have killed him. Appellant argues that he should have been permitted to imply the same to the jury.

We disagree and hold that the trial court did not abuse its discretion by excluding evidence regarding Shinkle's intoxication. Before trial, the State filed a motion in limine to prevent admission of evidence regarding the autopsy report that showed that Shinkle was intoxicated at the time of his death because the prejudicial nature of the evidence outweighed any probative value. Appellant responded that witness Lewis would testify that he and Shinkle had been drinking, that Shinkle was "really drunk," and Lewis's testimony would corroborate the autopsy finding. The trial court preliminarily excluded the evidence and held that it was not a fact in dispute but that it would readdress the issue if testimony presented made it relevant during the case-in-chief.

Outside the presence of the jury, appellant's counsel asked Dr. Erickson a series of questions regarding Shinkle's autopsy and the levels of intoxication in the event that subsequent testimony allowed for the admission of evidence of Shinkle's intoxication.

However, appellant failed to introduce subsequent testimony that would have allowed for the admission.

In *Jones v. State*, 340 Ark. 390, 10 S.W.3d 449 (2000), the Arkansas Supreme Court considered the use of testimony regarding illicit drugs found in a victim's system:

> In its motion, the State asserted that the finding of cocaine was not relevant to the cause of death, and would be extremely prejudicial. The defense responded that the evidence could be probative of the issue of whether or not [the victim] was likely to have provoked [the defendant] to react as he did. The trial court granted the motion before the trial began, agreeing that the cocaine evidence would be more prejudicial than probative, and noting that there was nothing to show that the cocaine had anything to do with the confrontation. However, the court said that if, during the trial, any proof to that effect was shown, he would reconsider his ruling.

*Id.* at 396, 10 S.W.3d at 452. The court found that the trial court did not abuse its discretion by excluding the evidence based on the trial court's finding that the evidence was more prejudicial than probative. *Id.* at 397, 10 S.W.3d at 453. Moreover, the court also observed that there was no evidence that linked the cocaine to the murder. *Id.*

As in *Jones,* the trial court did not abuse its discretion in excluding the evidence because the presence of alcohol in Shinkle's blood was not relevant to the cause of his death. Appellant did not rely on a justification defense. While appellant argues that Shinkle's behavior was bizarre and hostile and that Shinkle could have had interactions with other people that night, the only factual issue in dispute in this case was whether appellant or Thornton purposely shot and killed Shinkle. The existence of alcohol in Shinkle's blood was a situational factor and did not change the fact that Shinkle died from a gunshot wound. The evidence regarding his level of intoxication was therefore not relevant under Rules 401 and 402.

Additionally, appellant has not shown prejudice by the trial court's exclusion of the evidence. Hunter testified that she and Shinkle had been sitting on the front porch with Santiago "talking, drinking beer, and listening to some music" around 10:00 p.m. on June 23, 2012, and that Shinkle "had begun drinking beer around 8:00 p.m." Santiago corroborated that testimony, except to clarify that he and Shinkle "had been drinking beer since about seven o'clock that night," that he stopped drinking when he went to the hospital, and that he could not recall if they had smoked marijuana. Additionally, Meyers testified that she and her boyfriend Lewis had stopped at Shinkle's house that same night because Lewis was supposed to sell Shinkle some marijuana—although Lewis testified that he went there to smoke it with Shinkle, not sell it to him, but they never did. Meyers explained that no one had time to smoke any marijuana, but she pointed out that Shinkle was intoxicated and somewhat angry when he came over to their car. Witnesses were consistent in their testimony about Shinkle's slapping appellant as a result of comments made about the beer sign and his making fun of the shade of various individuals' skin color. Accordingly, uncontroverted evidence of Shinkle's intoxication and agitated behavior was before the jury despite the suppression of the evidence in question. Because appellant fails to show an abuse of discretion or prejudice, we affirm.

Affirmed.

ABRAMSON and GLOVER, JJ., agree.

*E.J. Reynolds Law Firm, P.A.*, by: *Emily J. Reynolds*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Ashley Argo Priest*, Ass't Att'y Gen., for appellee.