

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-16-533

|  |  |
|---|---|
| | **Opinion Delivered** September 13, 2017 |
| KEENAN LAMONTE LEWIS<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION<br>[NO. 60CR-14-2002]<br><br>HONORABLE BARRY SIMS, JUDGE<br><br>AFFIRMED |

## DAVID M. GLOVER, Judge

Appellant Keenan Lewis was convicted of first-degree murder in the shooting death of Jason Harris. He was sentenced to thirty-one years' imprisonment, with an additional consecutive fifteen-year sentence for use of a firearm during the murder. On appeal, Lewis raises three major points, with several subpoints: (1) the circuit court abused its discretion by allowing the State to question Bree Hood, on redirect examination, about prior specific instances of conduct on redirect examination; (2) the circuit court erred by refusing to allow Lewis to testify about his knowledge of Harris's gang affiliation; and (3) there was insufficient evidence to support the conviction because Lewis proved he was justified in shooting Harris in self-defense.[1] We affirm.

---

[1]In *Lewis v. State*, 2017 Ark. App. 191, this court ordered rebriefing due to abstract deficiencies; those issues have now been corrected.

On April 29, 2014, Harris and his girlfriend, Jessica White, were visiting friends at an apartment complex on Sanford Drive in Little Rock. Shortly after Harris arrived, Lewis walked from a second apartment complex across the street and approached Harris. White testified she heard Harris ask Lewis if he knew him and if they had a problem, heard three gunshots, and saw Lewis leave in a black sedan. White denied Harris had said anything threatening to Lewis or had a gun on his person.

A resident of the apartment complex, Levell Crump, who knew Harris by the nickname "Dreads," witnessed the shooting. Crump explained he saw a person who looked like Lewis with his arm fully extended, pointing a gun at Harris's head; heard a few "quick loud words" from the man holding the gun; and then heard the gun fire. Crump described Harris as crouched down in a defensive position, leaning away from the person holding the gun, when he was shot. Crump testified Harris had a gentle disposition, was a non-threatening person, and he did not hear Harris say anything aggressive to the shooter.

Bree Hood, Lewis's girlfriend, was called as a witness for the State; she testified she did not witness the shooting because she was inside their apartment, but that she did hear gunshots outside. Hood said she did not know Lewis carried a gun. Hood did not know Harris, but she said Harris had come to their door approximately a month before the shooting occurred and talked to Lewis; while she did not know what was said, she testified it scared Lewis and made him nervous. Hood stated that sometimes when she and Lewis were leaving the apartment, Harris would make Blood gang-affiliation sounds and point at Lewis, but Harris never made any statements directly to her. However, Hood claimed Harris would say things to her daughter that scared her while she was walking to and from the bus

stop. Hood testified she never called police about any of the incidents because she did not want to be seen talking to the police because "snitches get stitches."

Dr. Charles Kokes, the medical examiner who performed Harris's autopsy, testified that Harris was hit by nine bullets. It was his testimony that two of the wounds—one that entered through the left arm and injured the aorta, lodging in Harris's thoracic spine, and the other that entered the right chest and passed through the heart—by themselves would have been fatal. Additionally, Harris was shot through the left cheek and six times in his lower extremities; the wounds to his lower extremities were incurred while Harris was lying on the ground.

Hood was also called as a witness for the defense. She testified that a lot of apartments were being broken into, her children were fearful about incidents that occurred while they were coming from and going to school, and while she and Lewis had talked about moving, they could not afford to do so at the time. Breanna Small, Hood's daughter, confirmed she had encountered Harris, whom she knew as "Dreads," as she walked to and from her bus stop. She said Harris had asked her name and age, and once he asked her where her "punkass" daddy was; she was uncomfortable with these interactions, which she said began to happen out of the blue.

Lewis testified in his own defense. According to Lewis, the first time he encountered Harris, he saw him coming out of an apartment with a television. Lewis surmised Harris had broken into the apartment, and he said Harris knew he had seen him. Lewis was also concerned that Harris was talking to Breanna. Lewis said the next time he saw Harris was when Harris came to his apartment a few weeks before the shooting, and at that time, Harris

had a gun strapped to his hip and made threats that scared him, including statements that he would kill Lewis. Lewis indicated the threats were gang related. On the day of the shooting, Lewis said he had decided to talk to Harris "man-to-man" to resolve the situation. Although Lewis stated he had no intent other than to talk, he admitted he took a gun with him for self-protection, but he did not intend to use it. Lewis testified that when he confronted Harris, Harris became offensive and aggressive, and the discussion became an argument. Lewis claimed Harris had reached for his gun, and Lewis had shot him because he believed Harris was about to kill him.

*Self-Defense*

Though it is his third point, we must consider Lewis's sufficiency argument first on appeal, as preservation of Lewis's right against double jeopardy requires our court to consider challenges to the sufficiency of the evidence before alleged trial error is considered, even if the sufficiency-of-the-evidence issue is not presented as the first issue on appeal. *See LeFever v. State*, 91 Ark. App. 86, 208 S.W.3d 812 (2005). In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State, considering only the evidence supporting the verdict, and affirm if there is substantial evidence to support the conviction. *Taylor v. State*, 2017 Ark. App. 331, ___ S.W.3d ___. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id*. Witness credibility and the weighing of evidence are matters for the finder of fact, who is free to believe all or part of any witness's testimony and whose duty it is to resolve questions of conflicting testimony and inconsistent evidence. *Id*.

Lewis argues he proved the justification of self-defense because he possessed a reasonable belief Harris was about to use deadly force against him, and therefore, there was insufficient evidence to support his conviction for murder in the first degree. The State contends Lewis's sufficiency argument is not preserved for appellate review; we agree.

Rule 33.1(a) of the Arkansas Rules of Criminal Procedure provides that, in a jury trial, a directed-verdict motion must be made both at the close of the prosecution's evidence and at the close of all the evidence, and such motion shall state the specific grounds therefor. Subsection (c) of Rule 33.1 requires a directed-verdict motion to specify in what respect the evidence is deficient, as a motion merely stating that the evidence is insufficient does not preserve for appellate purposes issues relating to a specific deficiency, such as insufficient proof on the elements of the offense; the failure to challenge the sufficiency of the evidence in the time and manner required in Rule 33.1(a) constitutes a waiver of any question pertaining to the sufficiency of the evidence to support the verdict.

Lewis's counsel made the following directed-verdict motion at the close of the State's case:

> Your Honor, I move for a directed verdict on the first-degree murder. There wasn't—and I just deal with the ones that don't count first—the purpose of causing the death, purpose of causing death of another person, Mr. Lewis caused the death of Jason Harris. There's—the State didn't meet their burden that, one, he caused the death of Mr. Harris. Two, that Mr. Lewis was identified as a person. They didn't prove that he had the purpose to kill Mr. Harris. And Judge, I can do them all three, first degree, second degree, third degree—I mean first degree, second degree and manslaughter.
>
> The State has failed to meet their burden that Keenan Lewis under circumstances manifesting extreme indifference to the value of human life caused the death of Jason Harris there. They haven't touched on every element. They haven't shown extreme indifference. They haven't shown that he caused the death. They have not made a prima facie case on second degree. And as it relates to manslaughter

they haven't proved that he under reckless circumstances caused the death of Jason Harris.

Specifically, on all of them there's no testimony that there was a crime going on, that there was physical force being used that would cause the death. They have not proved that he was fleeing, trying to do a crime. They have not proved, I mean, they've proven it but they have not made a prima facie case on each and every element. So I'd move for a directed verdict on those. And they haven't proven that he had a firearm so I'd move to dismiss all that.

The circuit court denied Lewis's motions. After the close of all the evidence, Lewis's counsel renewed his directed-verdict motions, stating:

The Defense rests. We would renew our motion. The State has not made a prima facie case on first-degree murder, on second-degree and on manslaughter. One second. With the testimony that was given from the three witnesses it further shows that the State hasn't made every element on manslaughter on the second-degree murder and on the first-degree murder and I'll renew that with everything that I argued in the first stage.

The circuit court also denied Lewis's renewed directed-verdict motions.

A person is justified in using deadly physical force upon another person if the person reasonably believes that the other person is committing or about to commit a felony involving force or violence; using or about to use unlawful deadly physical force; or imminently endangering the person's life or imminently about to victimize the person as described in Arkansas Code Annotated section 9-15-103 from the continuation of a pattern of domestic abuse. Ark. Code Ann. § 5-2-607(a) (Supp. 2015). A person may not use deadly force in self-defense if the person knows he or she can avoid the necessity of using deadly force by retreating or, with complete safety, by surrendering possession of property to a person claiming a lawful right to possession of the property. Ark. Code Ann. § 5-2-607(b)(1)(A) and (2). However, a person is not required to retreat if the person is unable to retreat with complete safety; if the person is in the person's dwelling and was not the

original aggressor; or if the person is a law enforcement officer or a person assisting at the direction of a law enforcement officer. Ark. Code Ann. § 5-2-607(b)(1)(B)(i)–(iii). Justification becomes a defense when any evidence tending to support its existence is offered; once raised, it becomes an element that must be disproved by the State beyond a reasonable doubt. *Green v. State*, 2011 Ark. App. 700. Whether one is justified is largely a matter of the defendant's intent and is generally a question of fact. *Id*. A person is justified if he can show the victim was the aggressor and the accused used all reasonable means within his power and consistent with his safety to avoid the use of deadly force; critical to this inquiry is the reasonableness of the accused's apprehension that he was in danger of death or great bodily harm, as well as whether the accused used all reasonable means consistent with personal safety to avoid the use of deadly force. *Id*.

In *Kinsey v. State*, 2016 Ark. 393, 503 S.W.3d 772, our supreme court held that a challenge to the sufficiency of the evidence regarding the issue of self-defense was not preserved for appellate review when defense counsel's motions for directed verdict on the issue of self-defense were, "Also with regard to self-defense, the State had not disproven that," and "[T]he State has failed to negate self-defense, and he should be acquitted of everything." The *Kinsey* court refused to reach the merits of the sufficiency argument, holding that while Kinsey generally argued the State failed to negate self-defense, he failed to specifically identify how the State's proof was insufficient to meet its burden. In the present case, Lewis made no directed-verdict motion to the circuit court that even mentioned self-defense or the elements the State failed to negate. For this reason, Lewis's sufficiency argument is not preserved for appeal.

*Prior-Conduct Challenges under Rule 404(b) and Rule 608(b)*

Lewis makes multiple arguments under his second point on appeal—the circuit court abused its discretion in allowing the State to question Bree Hood about prior specific instances of conduct on redirect examination. This point of appeal centers on Hood's testimony during the State's case, when the State called Hood as a witness in its case-in-chief and asked Hood if she had ever called the police regarding any of the problems she, Lewis, or her children allegedly had with Harris; Hood testified she did not because she did not want to be seen talking to the police because "snitches got stitches."

On cross-examination by Lewis's attorney, Hood testified she did not run to the police if someone threatened her because the police would not come solve problems where she lived; she said when she tried to talk to the prosecutor about Harris coming to her door and threatening her and Lewis, she was cut off and was asked questions about whether Lewis had shot Harris. Hood testified she did not know of Lewis having a criminal record of any kind and she had not known him to have ever committed any crime.

On redirect examination, Hood stated she had never felt comfortable calling the police about anything, and Lewis had never committed any horrendous crime that she knew of. The State then argued that the question about whether Lewis was a person who committed crimes, and Hood's answer that she had not known him to commit any crime, opened the door to previous incidents of conduct by Lewis, including previous incident reports and calls made to the police by Hood, including a 2009 incident where Lewis struck Hood in the face, a 2009 incident where Lewis threatened to kill Hood, a 2010 incident where Lewis punched Hood in the face and accused her of cheating on him, and a 2011

incident where Hood called the police to report Lewis had threatened to beat her and told her he would return and kill everyone at the house. The State alleged this evidence was direct impeachment of her testimony that she had never contacted the police. Lewis's attorney disagreed, arguing that Rule 608 did not allow specific instances of conduct to attack a witness's credibility to be proved by extrinsic evidence, except for a sex-crime conviction; he further argued that the State could not prove Hood was the person who had made the phone calls to the police, and that such evidence was highly prejudicial. Lewis's attorney contended that the State was allowed to ask Hood if she had called the police, but it was stuck with Hood's answer and any further inquiry was impermissible. The State argued it should be allowed to ask Hood about her previous calls to the police, as Hood had testified she did not call the police when Harris came to their door and threatened them, but she had called the police regarding previous incidents involving her and Lewis; furthermore, Hood had testified that Lewis was not someone who committed crimes. The circuit court ruled it would allow the State to question Hood about the incidents between her and Lewis. When the State questioned Hood about the incidents, Hood testified that in all those incidents, she was not the one who called the police; rather, it was her mother.

Lewis breaks this point of appeal into two subheadings. Under subheading A, he makes three arguments regarding Rule 404(b) of the Arkansas Rules of Evidence:

(1)     the circuit court erred in finding Rule 404(b) of the Arkansas Rules of Evidence was not implicated;

(2)     because Rule 404(b) was implicated by the State's line of questioning, the evidence should have been excluded because it was not independently relevant to prove a material point related to Lewis's murder charge; and

(3) because Rule 404(b) was implicated, the probative value of such character evidence was substantially outweighed by the danger of unfair prejudice.

Under subheading B, he makes five separate arguments that the circuit court erred in permitting the State to question Bree Hood on redirect examination about prior specific instances of conduct under Rule 608(b) of the Arkansas Rules of Evidence:

> (1) the State's final three questions during Hood's redirect examination were not asked in good faith;

> (2)  the final three questions were not related to her character for truthfulness or untruthfulness;

> (3) it was error to allow the State to impeach Hood under [Rule] 608(b) because the evidence was offered on redirect examination rather than cross-examination as required by the rule;

> (4) the probative value of the impeachment evidence was far outweighed by its prejudicial effect; and

> (5) once Hood testified that her mother, and not her, had called police in the past, the State should not have been allowed to ask about other alleged calls she made to the police.

Some of Lewis's arguments under these subheadings are not preserved for appellate review. To preserve an argument for review on appeal, there must be a specific objection made to the circuit court that is sufficient to apprise it of the particular error alleged; our court will not address arguments made for the first time on appeal. *Maciel v. State*, 2016 Ark. App. 413, 501 S.W.3d 847.  A party is bound by the scope and nature of the arguments made at trial and may not change the grounds for an objection on appeal. *Id.* Furthermore, a contemporaneous objection is required to preserve an issue for appeal. *Pascuzzi v. State*, 2016 Ark. App. 213, 489 S.W.3d 709. Lewis's arguments under A2, A3, B1, B2, B3, and

B4 are not preserved for appellate review because no specific objections were made to the circuit court, and these specific arguments are being made for the first time on appeal.

As to the issues that are preserved, we disagree that the circuit court's decisions regarding this evidence were in error. A determination to admit or exclude evidence will not be reversed absent an abuse of the circuit court's discretion, which requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Gillean v. State*, 2015 Ark. App. 698, 478 S.W.3d 255.

Lewis's first preserved argument under this point is that the circuit court erred in finding that Rule 404(b) was not implicated by the State's line of questioning. Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(b) was not implicated because the questions regarding the phone calls to the police were not asked to show Hood's character or conformity therewith—they were asked to impeach Hood's testimony that she would never call the police and that she had not known Lewis to commit any crimes. There was no abuse of discretion in allowing this testimony.

Rule 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking his credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2)

concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Lewis's counsel opened the door to question Hood's truthfulness when Hood testified she would not call the police and she had not known Lewis to commit any crimes. There were at least four instances when calls had been made to the police regarding Lewis's violence and threats of violence toward Hood. The State did not attempt to prove this by extrinsic evidence; rather, it questioned Hood's truthfulness by asking her directly about the phone calls made regarding Lewis's violence toward her. There was no abuse of discretion in allowing this line of questioning.

Even if the circuit court had erred in admitting this evidence, it would not provide a basis for reversal, as any error concerning this line of questioning was harmless. When the evidence of guilt is overwhelming and the error is slight, the error can be declared harmless and the conviction can be affirmed. *Gillean*, *supra*. Here, the first prong of the harmless-error analysis—overwhelming evidence of guilt—was met. Jessica White, Harris's girlfriend, testified Lewis walked over to Harris and shot him; she also testified Harris did not have a gun. Levell Crump, a resident of the apartment complex where Harris was shot, testified Harris was shot by a man who looked like Lewis, the man was three feet away from Harris with his arm holding the gun fully extended, the gun was aimed at Harris's head, and Harris was in a defensive position. Lastly, Lewis himself testified he shot Harris nine times.

Additionally, if there was error in admitting the line of questioning about Hood's phone calls to the police, any error was slight. In determining whether the error is harmless, the appellate courts look to see if the appellant was prejudiced by the erroneously admitted evidence; prejudice is not presumed, and a conviction will not be reversed absent an abuse

of discretion. *Gillean*, *supra*. Lewis cannot show that he was prejudiced by the State's line of questioning. As discussed above, the evidence of guilt was overwhelming, and the admission of impeachment evidence against Hood, if in error, was slight.

### *Gang Affiliation*

In his last point on appeal, Lewis argues the circuit court erred in refusing to permit him to testify regarding his knowledge of Harris's gang affiliation. Specifically, he argues that Rule 404(a)(2) of the Arkansas Rules of Evidence explicitly allows an accused to present evidence of a pertinent character trait of the victim; citing *Henderson v. State*, 335 Ark. 346, 980 S.W.2d 266 (1998), Lewis contends Harris's gang affiliation showed a violent character that was relevant to his justification defense and his state of mind when he shot Harris. We find no abuse of discretion in the circuit court's ruling.

While testimony regarding the defendant's and the victim's affiliations with rival gangs may be properly admissible to show motive for killing, the circuit court must balance the probative value of the evidence against its prejudicial value pursuant to Rule 403 of the Arkansas Rules of Evidence. *Scott v. State*, 325 Ark. 267, 924 S.W.2d 248 (1996). A determination to admit or exclude evidence will not be reversed absent an abuse of the circuit court's discretion, which requires the circuit court to act improvidently, thoughtlessly, or without due consideration. *Gillean*, *supra*. Furthermore, a circuit court's evidentiary ruling will not be reversed absent a showing of prejudice. *Id*. No prejudice results when evidence of gang affiliation would be merely cumulative. *Reynolds v. State*, 2016 Ark. 214, 492 S.W.3d 491.

Lewis is unable to show that he was prejudiced by the circuit court's refusal to allow him to testify about Harris's gang affiliation to the extent he wished. Lewis was allowed, without objection, to testify that Harris made gang-related threats toward him. He further testified Harris and David Gaines, who was known to Lewis as "OG," which stands for "Original Gangster," were affiliated with the same gang, at which time the State objected; after a bench conference, the circuit court simply told defense counsel to move on and leave it alone. Furthermore, Bree Hood was allowed to testify without objection that Harris had made Blood gang-affiliation "sounds" to Lewis in the weeks prior to the shooting. Lewis was allowed to present evidence that Harris was affiliated with a gang; therefore, any further evidence would merely be cumulative. There was no abuse of the circuit court's discretion in refusing to allow further evidence of any gang affiliation Harris might have had.

Affirmed.

WHITEAKER and HIXSON, JJ., agree.

*The James Law Firm*, by: *William O. "Bill" James, Jr.*, and *Michael Kiel Kaiser*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.

SLIP OPINION