Cite as 2026 Ark. App. 147

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR–25–170

|  |  |
|---|---|
| | **Opinion Delivered** March 4, 2026 |
| JONATHAN HITCHCOCK<br>APPELLANT | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT<br>[NO. 16JCR–23–700] |
| V. | |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE SCOTT A. ELLINGTON, JUDGE |
| | AFFIRMED |

## BRANDON J. HARRISON, Judge

Jonathan Hitchcock was convicted of four counts of rape and one count of second-degree sexual assault.  On appeal, he argues that the circuit court erred in (1) permitting two late-disclosed experts to testify against him, (2) denying his motion for continuance based on the State's late-expert disclosures, (3) allowing the State to amend the charges during the trial, and (4) admitting evidence about the alleged victim's black eye.  We affirm.

On 26 June 2023, the State charged Hitchcock with committing rape by engaging in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age.  The State alleged that Hitchcock had committed this act against his stepdaughter (MC) from age five to age ten.  After several amendments, he was ultimately charged with four counts of rape and one count of second-degree sexual assault.

A jury trial was held over two days in August 2024, and the jury found Hitchcock guilty on all charges. The court sentenced him to a total of 140 years' imprisonment. Hitchcock filed an untimely notice of appeal, but this court granted his motion to file a belated appeal. Hitchcock does not challenge the sufficiency of the evidence supporting his convictions, so a detailed recitation of the facts is not necessary. Specific facts related to the points on appeal will be discussed as needed.

## I. *Late-Disclosed Experts*

A determination to admit or exclude evidence will not be reversed absent an abuse of the circuit court's discretion, which requires the circuit court to act improvidently, thoughtlessly, or without due consideration. *Lewis v. State*, 2017 Ark. App. 442, 528 S.W.3d 312. Furthermore, a circuit court's evidentiary ruling will not be reversed absent a showing of prejudice. *Id.*

On 9 August 2024, the State filed notice of its intent to use expert testimony, specifically the testimony of Victoria Tyner, a forensic interviewer, and Jacqueline Wallace-Shannon, a sexual assault nurse examiner (SANE). Hitchcock moved to exclude this testimony, arguing that while both of these witnesses had been on prior witness lists, the State had failed to timely disclose its intent to call these witnesses as experts. He alleged that the State had known for months that it intended to designate these witnesses as experts but chose not to share that information with the defense until July 31, which was twelve days before trial. He also alleged prejudice from this late disclosure because it did not allow him enough time to prepare for cross–examination and to hire his own expert witness to provide rebuttal testimony. Hitchcock asked that if the witnesses were allowed to testify as experts,

then he be granted a continuance to adequately prepare. The State argued that the witnesses' names had been provided in discovery, that there had been no undue delay, and that there was no prejudice to Hitchcock.

The court addressed the issue at the pretrial hearing on 12 August 2024. The defense argued that it was prepared for the State to call the witnesses as lay witnesses, but twelve days before trial had not given it time to review the witnesses' curricula vitae (CVs) and the articles on which the witnesses would rely or to obtain its own experts. The defense cited *Vasquez v. State*, 2022 Ark. App. 328, 652 S.W.3d 586, which the State referenced when disclosing Tyler and Wallace-Shannon as witnesses. In *Vasquez*, this court held that the circuit court had abused its discretion in allowing a SANE, designated as a lay witness by the State, to present expert testimony on the frequency of normal findings on sexual-assault exams and a child's delay in disclosing sexual abuse, resulting in fewer physical findings on exams. This court also held that it was not harmless error because the victim's credibility was the primary issue, and there was "a reasonable probability that the erroneously admitted expert opinions of Smith—designed to lead the jury to infer that abuse occurred despite the lack of physical findings and the delayed disclosure of abuse—impacted and effected the jury's credibility finding." *Id*. at 12, 652 S.W.3d at 593. Alternatively, the defense asked for a continuance in order to prepare for cross-examination and obtain its own experts.

The court found it "disingenuous" that the defense would be surprised that the State would want to call these two witnesses as experts. The court also found that the defense had been placed on notice by email on July 31, and "just because of the technicality of not filing a document—you had notice, and I'm not falling for that. So, that motion is denied."

3

Before this court, Hitchcock argues that, as in *Vasquez*, the only direct evidence against Hitchcock was MC's testimony, so her credibility was the most crucial factor for the decision, and the alleged victim's disclosure was delayed by years. He asserts that the testimony of the SANE and forensic interviewer played a large part in "bolstering" MC's credibility. Also similar to *Vasquez*, the State relied on the expert testimony in its closing argument to demonstrate that late disclosures and a lack of physical findings are "the norm."

Hitchcock also cites *United States v. Sims*, 776 F.3d 583 (8th Cir. 2015), in which the government first notified the defendant of its intention to call a forensic analyst five days after a pretrial conference and six days before trial. Sims moved to exclude the DNA evidence as untimely, and the district court granted Sims's motion and excluded the DNA evidence from trial. In examining whether the district court abused its discretion, the Eighth Circuit looked at three factors: (1) the reason, or reasons, for the delay in production of the evidence, including whether the government acted in bad faith; (2) whether the defendant was prejudiced; and (3) whether a lesser sanction would secure future compliance by the government. The Eighth Circuit held that the district court did not abuse its discretion in excluding DNA evidence as a sanction for the government's failure to disclose because (1) the district court concluded that the government had acted in a reckless disregard of the discovery deadline by failing to check on the DNA results with the lab, and (2) the defendant was prejudiced by the late disclosure. The court held that the government's action had "made it impossible for Sims to review the new DNA evidence, prepare for cross examination, and hire his own expert witness to rebut the conclusions made by the government's expert before trial." *Id.* at 586.

4

Hitchcock contends that here, the State had no good-faith reason for the late designation of the witnesses as experts, and it offered no explanation for the delay. He asserts that the State made it virtually impossible for him to prepare to cross-examine the late-designated experts and to hire an expert of his own.

Hitchcock also argues that the State's late designation of its experts violated Ark. R. Crim. P. 17.1, which provides,

> [T]he prosecuting attorney shall disclose to defense counsel, upon timely request, the following material and information which is or may come within the possession, control, or knowledge of the prosecuting attorney:
>
> (i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at any hearing or at trial;
>
> . . . .
>
> (iv) any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations, scientific tests, experiments or comparisons.

Ark. R. Crim. P. 17.1(a) (2025). Hitchcock explains that he filed a motion for the State's discovery on 5 July 2023, and the State named Tyner and Wallace-Shannon as witnesses on 28 June 2023[1] and 9 July 2024, respectively. The State did not identify these witnesses as expert witnesses or provide their CVs until 31 July 2024, which is over a year after he filed his motion for discovery.

The State first responds that it did not violate its obligations under Ark. R. Crim. P. 17.1 because that rule does not contemplate a deadline for expert disclosure. It only requires

---

[1]Hitchcock states that Tyner was first identified as a witness on 6 July 2023, but the witness list attached as an exhibit to his motion below is dated 28 June 2023.

5

the State to list witnesses and produce expert reports and statements, which it did in this case. Here, the State designated the witnesses as experts as soon as it determined that it was going to qualify the witnesses as experts, rather than offer lay-opinion testimony.

Second, even if the State had failed in its obligation to timely designate the witnesses as experts, the circuit court correctly found that the timing of the State's disclosure did not warrant sanctions. A reversible discovery violation will occur only if a defendant is prejudiced by the prosecutor's failure to disclose. *Gitchell v. State*, 2023 Ark. App. 503, 678 S.W.3d 621. "[T]o show prejudice, an appellant must demonstrate a reasonable probability that the result would have been different had the information been disclosed." *Id*. at 10, 678 S.W.3d at 628.

The State contends that Hitchcock cannot demonstrate prejudice from its expert-witness designations in this case for three reasons. First, despite the initial lack of formal expert-witness designations, Hitchcock had notice from the discovery provided that the challenged opinions could be offered at trial. He had experienced defense counsel who knew the type of opinions that SANEs and forensic interviewers often offered, and the forensic interview and SANE report were produced in discovery.

Second, the opinions were properly admitted regardless of the expert designations. The State designated Tyner and Wallace-Shannon as experts because it was concerned that their opinions would only be admissible as expert opinion under this court's opinion in *Vasquez*, 2022 Ark. App. 328, 652 S.W.3d 586. But *Vasquez* has been overruled by the Arkansas Supreme Court, which held that the circuit court does not abuse its discretion in permitting a witness to offer lay-opinion testimony simply because the witness could have

6

been qualified as an expert. *See Romick v. State*, 2025 Ark. 57, 709 S.W.3d 816 (circuit court did not abuse its discretion in permitting SANE to offer lay opinion testimony about the lack of physical evidence in abuse cases). Thus, the State concludes, the opinions Hitchcock challenges in this case would have been properly admitted without the expert designations, and Hitchcock cannot demonstrate prejudice.

Third, the State argues that Hitchcock cannot demonstrate that the timing of the expert disclosures undermined or changed the outcome of this case. MC testified in detail about the abuse she suffered at the hands of Hitchcock, and that testimony alone is sufficient to sustain his convictions. *See Standridge v. State*, 2023 Ark. App. 141, 662 S.W.3d 255 (a rape victim's testimony may constitute substantial evidence to sustain a conviction of rape, even when the victim is a child). In addition, specific details in MC's testimony were corroborated by her mother. Finally, the State asserts that the challenged opinions were not critical to the outcome because MC refused an internal sexual-assault examination, and without that examination, the jury did not know if MC had physical injuries. Likewise, MC did not wait months or years after the abuse ended to report it, so a reasonable jury would not consider this a delayed-disclosure case.

We hold that Hitchcock cannot demonstrate prejudice from the circuit court's decision to allow Tyner's and Wallace-Shannon's testimony. In a rape case involving a child victim, it is no surprise that the child was examined by a SANE and interviewed by a forensic examiner and that the SANE and forensic examiner would testify at trial. In addition, the exam results and forensic interview were produced in discovery. This case is distinguishable from *Sims*, which involved the complexity of DNA evidence and

7

understandably required expert review and testimony for the defense. In addition, the district court in *Sims* found that the government had acted in "reckless disregard," but there is no evidence of such recklessness or bad faith here. 776 F.3d at 586. On the contrary, the State was transparent about its reason for designating these two witnesses as experts—it was concerned that such action was necessary after this court's opinion in *Vasquez*, which has since been overruled.

## II. *Denial of Continuance*

We review a denial of a motion for continuance under an abuse-of-discretion standard, and an appellant must demonstrate that the circuit court's abuse of its discretion resulted in prejudice amounting to a denial of justice. *Denham v. State*, 2026 Ark. App. 47, ___ S.W.3d ___.

Hitchcock argues that the circuit court abused its discretion by not granting him a continuance to properly investigate and prepare to cross-examine the late-disclosed experts. He repeats his argument that the State failed to identify the witnesses as expert witnesses until less than two weeks before trial and over year after he first requested discovery information pursuant to Rule 17.1. He asserts that twelve days' notice was not sufficient for him to present a meaningful defense to the expert testimony.

The State responds that for the same reasons it stated in the first point, Hitchcock cannot demonstrate that he was prejudiced by the circuit court's denial of his motion for continuance. Hitchcock had notice from discovery that the opinions might be offered at trial; the opinions were admissible as lay opinions; and the challenged opinion testimony

8

was not critical to the outcome of the case. Therefore, the State contends, the circuit court did not abuse its discretion by denying the continuance motion.

We affirm the denial of the continuance. Again, given the nature of the case, Hitchcock knew these two people would likely testify even before they were named as witnesses, and whether designated as expert witnesses or not, the substance of their testimony did not change. Thus, Hitchcock has failed to demonstrate prejudice from the denial of his motion for continuance.

III. *Amendment of Charges*

A felony information may be amended with permission from the circuit court before the case is submitted to the jury as long as the amendment does not change the nature of the crime charged or create an unfair surprise for the defendant. *Thomas v. State*, 2022 Ark. 12, 637 S.W.3d 268. Prejudice is not presumed absent the defendant's moving for a continuance or claiming surprise once put on notice of the State's planned amendment, and we will not reverse a conviction in the absence of prejudice. *Curl v. State*, 2019 Ark. App. 200, 575 S.W.3d 458.

During the presentation of the State's case, the State asked to amend the information to include a charge of second-degree sexual assault. The State explained that it currently had a presence-of-a-child enhancement added to one of the rape counts, and it wanted that enhancement to apply instead to the second-degree sexual-assault count. The defense objected, arguing that the State could not add a count and that the defense was not "on notice of it." The State countered that it is allowed to amend charges or add charges up to and until the close of the State's evidence. The court remarked, "So, the record would

9

certainly be cleaner if you amended one of those rape charges to a sexual assault charge. But, if you want to just add one, that's fine, too. . . . So, if you want to add a fifth charge, I guess—I'll ponder on that a minute."

After the State's last witness had finished testifying, the State renewed its motion to amend. The defense stated, "Again, we would note our objection, but you've already ruled that it was coming in. . . . So, we would renew our objection."

On appeal, Hitchcock asserts that the court erred in allowing the amendment because there are different elements of proof for second-degree sexual assault than rape. *See Webb v. State*, 2012 Ark. 64 (second-degree sexual assault is not a lesser-included offense of rape of a person less than fourteen years of age, as second-degree sexual assault requires proof of additional elements that rape does not). Hitchcock also contends that adding this new charge created unfair surprise. In *Harmon v. State*, 277 Ark. 265, 641 S.W.2d 21 (1982), Harmon was charged with capital felony murder; after the jury had been sworn, the circuit court permitted the prosecutor to amend the information to add alternatively that the murder was committed in the course of robbery. The supreme court held that this was reversible error because "the nature of the charge was unquestionably changed by adding the offense of robbery. That amendment was not permissible in the absence of any notice to Harmon that he was to be required to defend an essentially different charge of capital murder." *Id*. at 270, 641 S.W.2d at 24. The supreme court also noted that no excuse was offered for the prosecutor's six-month delay in seeking the amendment.

Hitchcock argues that, like *Harmon*, the amendment in this case changed the nature of the offense and required him to defend against an entirely separate alleged incident. He

also asserts that the prosecution offered no excuse for waiting until the middle of trial to request the amendment.

We need not address Hitchcock's "different-elements" argument because he failed to raise it below. The only argument that Hitchcock made below is that the defense was not "on notice" of a possible amendment of the charges. This court will not address arguments made for the first time on appeal; a party is bound by the scope and nature of the arguments made at trial. *Lewis*, 2017 Ark. App. 442, 528 S.W.3d 312.

Giving Hitchcock's "notice" argument a generous interpretation, we treat it as an unfair-surprise argument. The State asserts that Hitchcock was on notice that there were incidents of alleged sexual abuse other than the four charged rapes because the probable-cause affidavit and MC's interview discussed multiple sexual encounters and repeated abuse over a five-year period. The State contends that these disclosed allegations as well as MC's testimony at trial covered more incidents than the four charged rapes and included conduct that would not meet the definition of rape. Thus, the State argues, Hitchcock knew he would be defending himself against the sexual-abuse allegation that constituted the additional charge, and he was not unfairly surprised by the amendment. *See Morehead v. State*, 2024 Ark. App. 624, at 5, 704 S.W.3d 322, 325 (amendment to add counts of second-degree sexual assault to an information charging the defendant with rape did not present unfair surprise because "[t]he rapes and the sexual assaults arose from a common set of facts, and both were discussed in the probable-cause affidavit").

The State also argues that Hitchcock cannot demonstrate prejudice. His defense was

a general denial challenging MC's credibility and the lack of corroborating evidence, so the amendment did not impair his ability to put on that defense. Further, Hitchcock did not ask for a continuance based on the State's request to amend the charges. *See Truax v. State*, 2022 Ark. App. 164 (defendant could not show prejudice from an amended charge because he did not argue insufficient time to prepare an adequate defense due to the amendment, nor did he seek a continuance).

We hold that based on the reasoning in *Morehead*, *supra*, Hitchcock was not unfairly surprised. We also hold that he cannot demonstrate prejudice because his general–denial defense remained the same, and he did not request a continuance.

IV. *Evidence of Black Eye*

Jenna Green, the school counselor at MC's school, testified that she was on bus duty in March 2023 when she noticed that MC had "a very defined black eye." Green asked MC about the black eye, but the defense objected on hearsay grounds to Green testifying to what MC said in response. The State asserted that it was not for the truth of the matter asserted but rather to explain why Green spoke to MC in her office and asked her additional questions. The circuit court allowed the testimony, and the following exchange occurred:

PROSECUTOR: So, Jenna, she has a black eye you see?

GREEN: Yes, ma'am.

PROSECUTOR: You asked her about it?

GREEN: I do.

PROSECUTOR: What do you do then?

GREEN: She tells me that she hit it—she hit it on a car door playing with her cousins.

12

PROSECUTOR: I just want to be clear. The black eye is not related—

GREEN: No, ma'am.

PROSECUTOR: —in any way to Mr. Hitchcock, the defendant, or anything like that?

GREEN: No, ma'am. No.

PROSECUTOR: Okay. But it drew your attention to [MC]?

GREEN: It did.

Hitchcock argues on appeal that Green was allowed to testify "that she observed the alleged victim to have a black eye, and made a report to the child-abuse hotline based on it." He contends that this evidence was irrelevant and unfairly prejudicial because "there was no way for the jury to interpret Green's testimony about the alleged victim's black eye other than as blaming Hitchcock for causing it."

We hold that Hitchcock's argument is not preserved for our review. First, it appears that Hitchcock has misrepresented the testimony below. It is clear from Green's testimony that the black eye is what led her to initially speak with MC and that after further conversation with MC, Green made a hotline report to the state police that included allegations of rape. The black eye was not the basis for the hotline report. In addition, the quoted testimony above made it evident to the jury that the State was not alleging that Hitchcock had caused the black eye.

Second, Hitchcock's objection below was a hearsay objection, not to testimony about the black eye, but to MC's response when asked about the black eye. He did not object to testimony about the black eye on grounds of relevance or prejudice. This court

13

will not address arguments made for the first time on appeal; a party is bound by the scope and nature of the arguments made at trial. *Lewis*, *supra*.

Affirmed.

VIRDEN and BARRETT, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.