# United States Court of Appeals
## For the First Circuit

No. 14-1403

UNITED STATES,

Appellee,

v.

BAHMAN HABIBI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Barron, Selya and Stahl,
Circuit Judges.

Jeffrey W. Langholtz on brief for appellant.
Thomas E. Delahanty, II, United States Attorney, and Renée M. Bunker, Assistant United States Attorney, on brief for appellee.

March 20, 2015

**BARRON, Circuit Judge.** Bahman Habibi raises three challenges to his October 2013 conviction for possession of a stolen firearm in violation of 18 U.S.C. § 922(j).[1] Habibi argues that the District Court abused its discretion in admitting extensive evidence relating to his heroin use and heroin trafficking. Habibi also argues that the District Court abused its discretion in allowing an FBI agent involved in the investigation that led to Habibi's arrest to testify on issues relating to DNA residue. And, finally, Habibi argues that the District Court should have instructed the jury on "transitory possession," as he sought to build his defense against the possession charge on that basis. We find no merit to any of these challenges and therefore affirm the conviction.

## I.

We begin with the challenge to the admission of the evidence of Habibi's past drug use and trafficking. Although "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," Fed. R. Evid. 404(b)(1), "[t]his evidence may be admissible for another purpose," Fed. R. Evid. 404(b)(2). In particular, the Federal Rules of Evidence specifically enumerate a number of purposes for

---

[1] Habibi was sentenced to sixteen months in prison, to be followed by three years of supervised release.

which such evidence may be used: "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  And that "list of purposes is not exhaustive."  United States v. Landry, 631 F.3d 597, 602 (1st Cir. 2011).

Thus, where a defendant challenges a district court's admission of prior bad acts evidence, the first question for a reviewing court is whether the objected-to evidence "has 'special relevance'" to the case, by which we mean that the objected-to evidence "is relevant for any purpose apart from showing propensity to commit a crime."  United States v. Doe, 741 F.3d 217, 229 (1st Cir. 2013) (quoting United States v. Rodríguez-Berríos, 573 F.3d 55, 64 (1st Cir. 2013)).  For if the evidence does have such special relevance, then Rule 404(b) does not bar its admission.

Here, proof of possession was complicated by the fact that Habibi apparently was not involved in either the initial theft of the firearm (which was taken from a police officer's personal vehicle) or the robberies in which the gun was subsequently used. But the gun was found in Habibi's home, in a secret hiding place. The government thus sought to show how it got there -- and thus, that Habibi had knowing possession of the stolen gun[2] -- by

---

[2] See 18 U.S.C. § 922(j) ("It shall be unlawful for any person to receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition . . . which is . . . or which has been shipped or transported in, interstate or foreign commerce, . . . knowing or having reasonable cause to believe that

introducing evidence that Habibi had taken possession of the gun and kept it at his home both in consequence of his ties to two of his heroin customers and out of his concern that the government would prosecute him on the basis of his drug trafficking.

According to the government, therefore, the evidence relating to Habibi's heroin use and trafficking was not introduced to show Habibi's propensity to engage in criminal behavior. Instead, the government claims, it introduced this evidence to provide context for the crime, to help explain how Habibi came to possess the gun by showing the extent of his relationships to those who claimed he took possession of it, and to show why he had a special motive to do so.

Specifically, the government called two longstanding heroin customers of Habibi's to testify at trial about how the gun came to be in Habibi's possession. These two customers testified that they, along with a friend who had stolen the gun, hid the gun prior to the friend's arrest. And these customers further testified that, after their friend's arrest, the two of them, plus Habibi, together retrieved the gun. The two government witnesses explained, however, that it was Habibi who picked up and carried the gun back to the car, and it was Habibi who hid the gun in a hole in the wall in the basement of his residence after they had secreted it away.

---

the firearm or ammunition was stolen.").

The government also put on evidence relating to Habibi's heroin trafficking to show that Habibi had a special motive to keep possession of the stolen gun. In particular, the two heroin customers testified that Habibi wanted to hold onto the gun in case he was arrested for drug trafficking and needed leverage, which he thought the stolen police gun could provide.

On this record, the District Court did not abuse its discretion in concluding that the objected-to evidence was not "'evidence . . . extrinsic to the crime charged'" that the government introduced "solely 'for the purpose of showing villainous propensity.'" United States v. Gonyer, 761 F.3d 157, 162 (1st Cir. 2014) (quoting United States v. Roszkowski, 700 F.3d 50, 56 (1st Cir. 2012)). As the government contends, the evidence about Habibi's customers frequenting his residence to use heroin that he supplied them "helped the jury understand the basis for [those customers'] trusting relationship with Habibi." See United States v. Arias-Montoya, 967 F.2d 708, 712–13 (1st Cir. 1992) (evidence may have "special relevance" where it shows a "common scheme or suggested course of continuous dealing" or where "the earlier bad act [is] likely to provide context or complete the story of the one subsequently charged"); United States v. Harrison, 679 F.2d 942, 948 (D.C. Cir. 1982) (evidence of past drug distribution admissible to show "course of dealing" and intent on instant drug charges). And, as the government further contends,

-5-

the testimony from those customers about Habibi's heroin trafficking "was highly probative of Habibi's motive and intent regarding his possession of the firearm."  See Fed. R. Evid. 404(b)(2) (motive and intent are valid purposes for prior bad acts evidence).  Thus, the evidence had more than sufficient "special relevance" for admission under Rule 404(b).

That conclusion, however, does not end our inquiry. Evidence that has "special relevance" may still be inadmissible "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  And while even Habibi concedes that "some limited reference to drug trafficking" "[a]rguably . . . may have been appropriate to establish motive," he contends that the government leveraged this evidence to such an extent that it crossed the line set forth by Rule 403.

But district courts are afforded "especially wide latitude" in balancing the relative probative and prejudicial values of evidence.  United States v. Nai Fook Li, 206 F.3d 78, 84 (1st Cir. 2000) (quoting United States v. Rivera, 83 F.3d 542, 545 (1st Cir. 1996)).  And thus, "[o]nly rarely -- and in extraordinarily compelling circumstances -- will we, from the vista of a cold appellate record, reverse a district court's on-the-spot

judgment concerning the relative weighing of probative value and unfair effect." Id. at 84-85 (quoting Freeman v. Package Mach. Co., 865 F.2d 1331, 1340 (1st Cir. 1988)).

Given the government's legitimate purpose in showing both that Habibi had extensive ties to certain heroin users implicated in the gun theft and that Habibi's prior involvement in drug trafficking supplied his motive in taking hold of the gun, this case is not the "rare and 'extraordinarily compelling'" one that requires us to "'reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect.'" United States v. Green, 698 F.3d 48, 56 (1st Cir. 2012) (quoting Nai Fook Li, 206 F.3d at 84-85; see also United States v. Burdulis, 753 F.3d 255, 263 (1st Cir. 2014) (reversal under Rule 403 appropriate only if reviewing court is "left with a definite and firm conviction that the court made a clear error of judgment" (quoting United States v. Trenkler, 61 F.3d 45, 57 (1st Cir. 1995))). We thus find no abuse of discretion in the District Court's admission of the objected-to evidence of Habibi's drug use and trafficking. See United States v. Vizcarrondo-Casanova, 763 F.3d 89, 94 (1st Cir.) (affirming admission of "cumulative" and nearly "overshooting" evidence that was used "to establish that the defendants had reason to trust one another"), cert. denied, 135 S. Ct. 307 (2014).

Habibi next argues that the District Court abused its discretion in allowing FBI Special Agent Christopher Peavey to testify on issues relating to DNA residue. Habibi bases his challenge on the limitations Rules 701 and 702 of the Federal Rules of Evidence place on opinion testimony.

The government asked Agent Peavey -- one of the law enforcement officers involved in the investigation and arrest -- a few questions about his experience with DNA residue to address the fact that test results showed that DNA on the stolen gun did not belong to Habibi. Other government witnesses had testified that Habibi had handled the gun and placed it in his basement. The government thus wanted to put on this testimony to show that detectable DNA is not left every time someone touches an object with his bare hands.

After voir dire on the inquiry, and over the objection of defense counsel, the District Court permitted the government to ask, and Agent Peavey to answer, as follows:

(1) Q: Throughout your career as a special agent with the FBI, have you worked on cases involving DNA cases?
A: Yes, I have.

(2) Q: What types of cases?
A: Multiple firearms violations and bank robberies.

(3) Q: Did any of those cases involve circumstances in which your investigation revealed that an individual touched or handled a[n] object with a bare hand, but when tested, no detectable DNA was found on that object?
A: Yes.

The District Court also allowed the defense to ask Agent Peavey on cross-examination whether he could "tell us with any certainty what [was] the probability of DNA being available on a gun after it[']s been handled," to which Agent Peavey answered that he could not.

Habibi contends that the District Court abused its discretion in permitting this testimony. But the Federal Rules of Evidence provide that lay witnesses, like Agent Peavey, may offer "testimony in the form of an opinion" so long as such testimony is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. And, here, the District Court did not abuse its discretion in concluding that Agent Peavey's objected-to testimony -- if opinion at all -- satisfied each of those criteria.

First, Agent Peavey's testimony was "rationally based on the witness's perception." Fed. R. Evid. 701(a). Each of the prosecutor's three agreed-upon questions concerned Agent Peavey's experience as a federal law enforcement officer, and each of Agent Peavey's answers was likewise based on that experience. And, as we have explained "[t]ime and again," "Rule 701 lets in 'testimony based on the lay expertise a witness personally acquires through experience, often on the job.'" United States v. George, 761 F.3d 42, 59 (1st Cir. 2014) (quoting United States v. Santiago, 560 F.3d

-9-

62, 66 (1st Cir. 2009)); cf. Santiago, 560 F.3d at 66 (testimony of individual involved in criminal investigation about code words used in drug deals "rationally based on the perception of the witness" under Fed R. Evid. 701(a)).

Second, Agent Peavey's testimony was also "helpful" to the jury. Fed. R. Evid. 701(b). A juror may well have believed that everyone who touches a gun (or anything else) automatically leaves DNA residue on it. The prosecution's colloquy with Agent Peavey revealed that, at least in Agent Peavey's experience, this was not the case. The District Court thus did not abuse its discretion in finding this testimony, though anecdotal, to be "helpful" to the jury. See United States v. Meises, 645 F.3d 5, 16 (1st Cir. 2011) ("The nub of [Rule 701(b)'s] requirement is to exclude testimony where the witness is no better suited than the jury to make the judgment at issue, providing assurance[] against the admission of opinions which would merely tell the jury what result to reach." (citations and internal quotation marks omitted, second alteration in original)).

Finally, Agent Peavey did not improperly base his testimony "on scientific, technical, or other specialized knowledge" that he did not possess. Fed. R. Evid. 701(c). Of course, as Habibi points out, an expert could have testified on the DNA residue issue. But Agent Peavey's challenged testimony, which was based only on his own investigative experience, "f[e]ll

-10-

comfortably within the boundaries of permissible lay opinion testimony." United States v. Valdivia, 680 F.3d 33, 50 (1st Cir. 2012). And, indeed, the only question asked of Agent Peavey that was directed to "scientific, technical, or other specialized knowledge" was the one defense counsel asked on cross-examination and to which, tellingly, Agent Peavey responded that he did not know the answer. We thus reject Habibi's challenge to this testimony.[3]

## III.

Finally, Habibi argues that the District Court committed reversible error by declining defense counsel's request to instruct the jury on the defense's so-called "transitory possession" theory. Defense counsel wanted the jury instructed with "something to the effect of the following":

> If in certain circumstances the contact [with the firearm] is so fleeting as to be inconsequential, you may conclude that possession does not attach, and that would include without intention so fleeting, without intention as to be inconsequential, you may conclude that possession does not attach.

The District Court declined to give such an instruction, finding the factual basis for it lacking. Instead, the District Court instructed the jury as follows:

> The term "possess" means to exercise authority, dominion or control over something. It is not necessarily the

---

[3] Because we conclude there was no abuse of discretion, we need not resolve whether Habibi waived any objection to Agent Peavey's testimony.

same as legal ownership. Briefness of contact alone does not preclude a finding of possession. The law recognizes different kinds of possession.

Possession includes both actual and constructive possession. A person who has direct physical control of something on or around his or her person is then in actual possession of it. A person who's not in actual possession, but who has both the power and the intention to exercise control over something, is in constructive possession of it.

"To successfully challenge a district court's decision not to give a requested instruction, the defendant first 'must present sufficient evidence to be entitled to [the] instruction.'" United States v. Baird, 712 F.3d 623, 627 (1st Cir. 2013) (alteration in original) (quoting United States v. Callipari, 368 F.3d 22, 32 (1st Cir. 2004), vacated on other grounds, Callipari v. United States, 543 U.S. 1098 (2005)). This Habibi fails to do.

There was no dispute at trial that Habibi and his customer-confederates retrieved the gun on April 25, 2013, and put the gun in his basement on that same day. Nor was there any dispute that Habibi led the police to the gun -- which was hidden away in a hole in the wall in Habibi's basement -- on June 14, 2013, the day the police effectuated their warrant at Habibi's residence. Nor, finally, was there any evidence at trial that anyone other than Habibi ever had or took possession of the gun in between those two dates. Thus, the evidence admits of only the conclusion that Habibi was in knowing possession of the gun for at least fifty days. See United States v. Ridolfi, 768 F.3d 57, 61

(1st Cir. 2014) ("Knowing possession may be proven through either actual or constructive possession," and "[c]onstructive possession of a firearm may be established when a person 'knowingly has the power and intention at a given time of exercising dominion and control over [it] either directly or through others.'" (quoting United States v. McLean, 409 F.3d 492, 501 (1st Cir. 2005)) (second alteration in original)).  And such a time period is hardly fleeting.  See id. at 59-63 (suggesting that ten-day period of dominion and control was not fleeting).  The District Court thus did not err in declining to give the requested instruction.

## IV.

For the foregoing reasons, we affirm.