Cite as 2022 Ark. App. 328

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-21-626

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** September 14, 2022 |
| SANTIAGO VASQUEZ | | APPEAL FROM THE GREENE |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [NO. 28CR-19-227] |
| V. | | |
| | | HONORABLE PAMELA |
| | | HONEYCUTT, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | REVERSED AND REMANDED |

## LARRY D. VAUGHT, Judge

Santiago Vasquez appeals the sentencing orders entered by the Greene County Circuit Court convicting him of five counts of raping IS, a minor, and sentencing him to serve twenty-five years' imprisonment on each count, to run concurrently. On appeal, Vasquez raises two evidentiary challenges. He first argues that the circuit court abused its discretion in allowing the sexual-assault nurse examiner (SANE), designated a lay witness by the State, to present expert testimony. Vasquez also argues that the circuit court abused its discretion in failing to grant a mistrial on the cumulative effect of the State's improper comments in closing argument. There is merit to Vasquez's first point on appeal, and we reverse and remand for a new trial. Vasquez's second point on appeal is not preserved for review.

At trial, the State presented the testimony of IS, who was twelve years old. She testified that when she was eight or nine years old, she was raped multiple times by Vasquez, her mother's boyfriend. The State also presented the testimony of law enforcement officials;

crime-laboratory experts; IS's mother; and a SANE witness, Tracy Smith, whom the State had designated as a lay witness. Smith stated that she works at a child-advocacy center performing forensic interviews and examinations of children who allege they have been sexually abused. She testified that she is a registered nurse and that she was certified as a SANE in 2011. She said that she has performed over 1,000 forensic interviews and over 1,300 forensic exams.

Smith testified that she conducted the forensic interview and exam of IS. Smith said that during the interview, IS disclosed multiple accounts of sexual abuse perpetrated by Vasquez. IS told Smith that the last occasion of abuse had been two weeks prior. As for the examination, Smith testified that IS had a normal exam, which meant that Smith "saw no acute injuries for healed scars on [IS's] genitalia or anal area." Then, the following exchange occurred:

> STATE:       And based on the 1,300 cases that you've worked on, is it strange to have a normal finding --
>
> . . . .
>
> DEFENSE:       We would object at this time and renew our previous objection. [Smith has] not been designated as an expert. This is classic expert testimony. She's getting into what she's done in her professional career, not this individual case, but a broad spectrum of cases in comparison. That's scientific. It's quantitative. It's expert testimony, and she's not been designated as such.[1]
>
> STATE:       Your Honor, you stated earlier she can talk about the cases that she's worked on just. I'm just asking her about the cases that she's worked on. I've laid the foundation for all that we talked about.

---

[1]As indicated by the objection, this was not Vasquez's first challenge to Smith's testimony. Vasquez raised the objection prior to trial and prior to Smith's testimony. In both instances, the circuit court held that Smith would be permitted to testify about the cases on which she had actually worked. The court stated that Smith "can testify to her records, her knowledge, her experience."

DEFENSE: That's what expert – if you read expert opinions, Judge, that's what it is.

. . . .

COURT: . . . I don't think that she can say it's normal in cases of broad generalities. But if she's asked on the case[s] . . . she's actually worked on what percentage of them has there been physical damage, I think she can testify to that. That's based on . . .

DEFENSE: Judge, I just want to make sure our objection is noted for the record.

COURT: It's been noted numerous times.

DEFENSE: . . . [She wasn't] designated as an expert, and we weren't provided any documents that she has worked on to validate any expert opinion as she is going to testify to. We think that puts our client, Santiago, at a disadvantage.

. . . .

STATE: . . . What she's going to testify to are her own personal observations and experiences. This is not an outside person who has never looked at this file but is looking at the facts and giving an opinion not beyond the fact testimony. She's providing fact testimony. . . .

. . . .

DEFENSE: . . . When you don't designate an expert, then you're left with a fact witness . . . . If you don't designate them as an expert, they are a lay witness and they can only testify to facts.

 . . . .

COURT: I think I've laid some narrow perimeters that you can follow.

The State continued:

STATE: Ms. Smith, based upon the cases that you've worked yourself, just you, is it strange or odd for there to be normal findings?

SMITH: No. That's not strange or odd at all. It's typical.

STATE: In the cases that you've worked on, what percentage, if you know, are there actual findings [of sexual abuse]?

SMITH: . . . I would say of the cases I've done, five percent or less have physical findings that I can see on the day of exam. . . .

STATE: Based on your education and experience on the cases you've worked on . . . why [are] those numbers of physical findings [so low].

SMITH: Again, we're talking about children because I primarily see children. Timing is a huge effect, a huge factor in whether or not you're going to see injuries. Children don't disclose right away. Children who have been abused are scared during . . . .

Vasquez's counsel objected again, arguing that Smith was offering testimony about why children do not report or why they delay reporting sexual abuse, which is expert testimony. The State responded that it would limit its questioning to Smith's cases, to which the circuit court responded, "Okay." Counsel for Vasquez moved for a mistrial, and the circuit court denied the motion. The State proceeded:

STATE: Based on just the cases that you've worked on, why is that the case? I don't want you to speak in broad terms. I want you to talk about just the cases that you've worked on.

SMITH: The cases I've worked on, our disclosures, the patients we see, the timeframe between the last reported abuse and the time we see that child is usually weeks to months after the last abuse occurred. That's one reason. Another reason is children heal very quickly. And weeks after an allegation, weeks after an assault, acute evidence is going to be -- acute injury is going to be healed.

At the conclusion of the evidence, the jury found Vasquez guilty of five counts of raping IS. This appeal followed.

Arkansas Rule of Evidence 701 governs the admission of lay testimony and provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are

(1) Rationally based on the perception of the witness; and

4

(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

Ark. R. Evid. 701 (2021). Opinion testimony by lay witnesses is allowed in observation of everyday occurrences or matters within the common experience of most persons. *Felty v. State*, 306 Ark. 634, 640, 816 S.W.2d 872, 875 (1991). Our supreme court has also stated that the requirements of Rule 701 are satisfied if the opinion or inference is one that a normal person would form on the basis of the observed facts, but if an opinion without the underlying facts would be misleading, then the objection should be sustained. *Moore v. State*, 323 Ark. 529, 549, 915 S.W.2d 284, 295 (1996). Rule 701 is not a rule against opinions but is a rule that conditionally favors them. *Id.*, 915 S.W.2d at 295. We review a circuit court's decision to allow lay-opinion testimony under Rule 701 for abuse of discretion. *Flowers v. State*, 373 Ark. 127, 132, 282 S.W.3d 767, 771 (2008).

Rule 702 governs the admission of expert testimony and provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Ark. R. Evid. 702 (2021). The test as to whether a witness qualifies as an expert is whether, on the basis of his or her qualifications, he or she has knowledge of the subject at hand beyond that of ordinary persons. *Wilburn v. State*, 289 Ark. 224, 227, 711 S.W.2d 760, 761 (1986).

The application of Rule 701 is illustrated in both *Flowers* and *Felty*. In *Flowers*, a detective opined that the rear glass window of the victim's truck appeared to be broken from the outside because there was a brick and shattered glass found inside the truck. 373 Ark. at 132, 282 S.W.3d at 771. The supreme court held that the circuit court did not abuse its discretion in

finding that the opinion was proper lay testimony because it was rationally based on the detective's prior law enforcement experience, forensic training, and personal observation. *Id.*, 282 S.W.3d at 771. In *Felty*, the circuit court allowed two people who witnessed the rape to testify that the victim was "scared" and "trying to get away." The supreme court affirmed, holding that the testimony "easily fit" within Rule 701's parameters because the opinions were based on observations of everyday occurrences or matters within the common experience of most persons. *Felty*, 306 Ark. at 640, 816 S.W.2d at 875.

The opinions at issue in *Flowers* and *Felty* were based not only on the detectives' experience and observations, but they are also opinions that a normal person would form based on the observed facts and are within the common experience of people. These opinions are within the scope of Rule 701.

Vasquez argues that Smith's opinions—the frequency of normal findings on sexual-assault exams and that children often delay disclosing sexual abuse resulting in fewer physical findings on exams—are not based on observations of everyday occurrences or matters within the common experience of most persons and that such opinions exceed the permissible scope of lay testimony as set forth in Rule 701. We hold that Smith's opinions fall outside the parameters of Rule 701.

Smith's opinions that it is not strange or unusual for child sexual-assault victims to have normal physical findings and that it is common for child victims to delay reporting sexual assaults are not observations of everyday occurrences or matters within the common experience of most persons. Smith's opinions include her specialized knowledge, experience, training, and education in interviewing and examining over 1,300 child sexual-assault victims.

6

Moreover, a lack of physical findings and a child's delayed reporting of abuse in cases with allegations of repeated penetration may be counterintuitive and confusing to a lay person. Expert testimony in this area would be helpful to assist the trier of fact to understand the evidence.

While there are no cases in Arkansas directly on point, other jurisdictions have addressed the issue. In *State v. Gonzalez*, 834 A.2d 354 (N.H. 2003), the New Hampshire Supreme Court held that the testimony of a social worker and detective about the frequency of victim recantations or denials and about how the victims often delay disclosure of sexual abuse was inadmissible lay-witness opinion. *Id.* at 357–59.

> The testimony at issue in the present case involved whether, in sexual abuse cases, victim denials and recantations were not unusual. The tendency or frequency of sexual abuse victims' denials and recantations are not observations that any layperson is capable of making, but rather require special experience and knowledge not possessed by the public at large. We have recognized that a layperson is not capable of making such observations because "a child's delayed disclosure of abuse, inconsistent statements about abuse, and recantation of statements about abuse, may be puzzling or appear counterintuitive to lay observers when they consider the suffering endured by a child who is continually being abused." . . . Because of its counterintuitive nature, expert testimony may be permitted to educate the jury about apparent inconsistent behavior by a victim following an assault and to "provid[e] useful information that is beyond the common experience of an average juror."

*Id.* at 358 (alteration in original) (citing *State v. Cressey*, 628 A.2d 696 (1993); *State v. MacRae*, 677 A.2d 698 (1996)). The court held that both the social worker and the detective received training and had experience with sexual-assault victims not possessed by the public at large. *Id.* at 359. And while the testimony of both witnesses was based on their personal experiences with sexual-abuse cases, their conclusions that victim denials are not unusual is based on their

7

training, experience, and observations that are not within the common knowledge of the general public and are beyond the common experience of an average juror. *Id.* at 358–59.[2]

In *State v. Duran*, 343 P.3d 207, 210–11 (N.M. App. 2014), the Court of Appeals of New Mexico held that the district court abused its discretion when it allowed a forensic interviewer—not qualified as an expert—to testify that in her experience, the majority of children she had interviewed delay disclosing abuse. *Id.* at 209. The court of appeals held that the district court "conflused" [sic] the requirements of New Mexico Rules Evidence 11-701 and 11-702:[3]

> The district court explained that it would allow [the interviewer] to testify about delayed disclosure "based upon her training, and most especially, her experience in meeting with these children who are victims of sexual assault[.]" The fact that, as part of [the interviewer's] training and experience, she learned that delay occurred in a number of cases of alleged child abuse is not a legitimate basis for admitting the opinion of a lay witness; it can be important in admitting the opinion of an expert witness. *See* Rule 11-702 (defining an expert witness as "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education"). Training and experience are factors to be considered in evaluating expert testimony, not lay testimony. The court also explained that the frequency of delayed reporting is well-known by people in this field and reflected in learned treatises. Knowledge contained in treatises and understood by practitioners in their particular field is the type of testimony presented by an expert witness because it is not the type of information generally known by an ordinary citizen or the general public.

---

[2]While the New Hampshire Supreme Court held that the trial court abused its discretion in admitting expert testimony from the lay witnesses, the supreme court nevertheless affirmed the appellant's convictions because the error was harmless: the victim provided detailed accounts of the assaults, and there was evidence that the appellant had apologized in a family meeting and "said it would not happen again." *Gonzalez*, 834 A.2d at 360.

[3]New Mexico Rule of Evidence 11-701 is similar to Arkansas Rule of Evidence 701 except the New Mexico rule has the additional requirement that lay testimony cannot be based on scientific, technical, or other specialized knowledge within the scope of Rule 11-702. New Mexico Rule of Evidence 11-702 is identical to Arkansas Rule of Evidence 702.

*Duran*, 343 P.3d at 211 (some alterations in original).[4]

The reasoning in *Gonzalez* and *Duran* is convincing. In these cases, testimony concerning the frequency of children delaying disclosure of sexual abuse—purportedly based solely on the witnesses' experience and knowledge—was held to exceed the scope of lay testimony and, more particularly, was held to be expert testimony beyond the common experience and knowledge of the ordinary person. This is very similar to the type of opinion testimony offered by Smith and challenged by Vasquez.

The State argues that Smith's testimony was properly admitted under Rule 701 because it was based on her personal observations and experiences—not her specialized knowledge or training—and cites three Arkansas cases it contends support its position. The first is *Flowers*, where the supreme court affirmed the admission of a detective's lay testimony that a truck window was broken from the outside. *Flowers*, 373 Ark. at 132, 282 S.W.3d at 771. *Flowers* is distinguishable from Vasquez's case, however, because the detective's opinion is within an ordinary person's experience or knowledge.

The second case cited by the State is *Navarro v. State*, 371 Ark. 179, 264 S.W.3d 530 (2007). In *Navarro*, the supreme court affirmed the admission of the lay testimony of a detective who stated that it was not unusual to not find blood or fingerprints on objects, even after they had been touched or penetrated into a body. *Id.* at 195, 264 S.W.3d at 543. *Navarro*

---

[4]The New Mexico Court of Appeals held that the error was not harmless and reversed. *Duran*, 343 P.3d at 212–13. However, because the victim's testimony provided sufficient other evidence to support a conviction, the court of appeals remanded the case to the circuit court for a new trial. *Id.* at 213.

9

is likewise distinguishable from Vasquez's case because the detective's opinion is within an ordinary person's experience or knowledge.

Finally, the State cites *Fukunaga v. State*, 2014 Ark. App. 4, where an investigator, who had handled hundreds of sexual-abuse cases, testified without objection about the difficulties in interviewing victims of sexual abuse and that alcohol poisoning requiring hospitalization could trigger memories of sexual abuse. *Id.* at 4. On appeal, the appellant contended a *Wicks* exception applied. *Id.* at 3. This court disagreed, holding that the investigator did not give an opinion as to the credibility of the victim; thus, no *Wicks* exception applied. *Id.* at 5. *Fukunaga* is inapplicable to the case at bar because it was analyzed in the context of whether a *Wicks* exception applied, and this court specifically held that the investigator's opinion did not comment on the credibility of the victim, which cannot be said in Vasquez's case.

Smith's opinions go well beyond what she observed and heard when she examined and interviewed IS. As explained above, Smith's opinions regarding the frequency of abnormal findings on child sexual-assault exams and of delayed disclosure of abuse are not within an ordinary person's experience and knowledge, which is why expert-opinion testimony is helpful to assist the trier of fact. Without it, the jury might conclude from Smith's testimony that no sexual abuse occurred because there were no findings of abuse on IS's physical exam and because she waited two weeks before disclosing it. For these reasons, we hold that the circuit court abused its discretion when it allowed Smith to testify about the frequency of normal findings in a child sexual-assault examination and that children often delay disclosure of sexual abuse because her opinion testimony exceeds the scope of Rule 701.

The analysis under this point does not end here, however. It is well settled that evidentiary rulings are subject to harmless-error analysis, and we are bound to affirm if the error is harmless beyond a reasonable doubt. *Martin v. State*, 2013 Ark. App. 110, at 6, 426 S.W.3d 515, 519. Vasquez argues that the erroneous admission of Smith's opinion testimony is not harmless error. He cites *State v. Estrada*, 2013 Ark. 89, at 5, 426 S.W.3d 405, 408, and contends that where there is no physical evidence and the only evidence against a defendant in an allegation of sexual crimes against a minor is the testimony of the victim, the victim's credibility is highly relevant. He claims that Smith's testimony resulted in significant prejudice because it bolstered IS's credibility despite a lack of physical findings of abuse and her delayed disclosure. Vasquez points to a portion of closing argument when the State used Smith's testimony to vouch for IS's credibility:

> [Smith] has seen hundreds of sex abuse cases, had heard hundreds of stories for 20 years, statements by sex abuse victims. And she concluded following the examination that what she saw was consistent with sexual abuse.
>
> . . . .
>
> [S]he said the vast majority of the sex abuse cases that she sees don't have physical findings. It's the nature of kids. She testified to that. And she said . . . a normal exam does not exclude the possibility of sexual abuse and should never be interpreted to mean that no abuse occurred. It's right there in the report. She said that the vast majority of cases never saw sexual abuse.

We are called to determine whether the State's case against Vasquez was so strong, and the error so inconsequential, that we find no prejudice. *Russell v. State*, 289 Ark. 533, 535, 712 S.W.2d 916, 917 (1986). In the absence of Smith's opinions, the evidence against Vasquez included IS's testimony during which she explicitly, graphically, and unequivocally described sexual assaults perpetrated by Vasquez; IS's mother's testimony that IS reported the abuse to

11

her; and Smith's testimony that IS reported that Vasquez had sexually abused her. The evidence in favor of Vasquez includes his denials in his police interview and Smith's testimony that IS had normal findings on her sexual-assault exam and that IS delayed reporting the abuse.

All that is needed for a rape conviction is the uncorroborated testimony of the victim. *Vance v. State*, 2011 Ark. App. 413, at 5. This is so even when the victim is a child. *Harlmo v. State*, 2011 Ark. App. 314, at 6, 383 S.W.3d 447, 450–51; *Jones v. State*, 300 Ark. 565, 567, 780 S.W.2d 556, 556 (1989). It is clear that IS's credibility is the primary issue in this case. Accordingly, we hold that there is a reasonable probability that the erroneously admitted expert opinions of Smith—designed to lead the jury to infer that abuse occurred despite the lack of physical findings and the delayed disclosure of abuse—impacted and effected the jury's credibility finding. Therefore, we reverse and remand for a new trial. *Duran*, 343 P.3d at 212–13.

Vasquez's second point on appeal is that the circuit court abused its discretion when it failed to grant a motion for mistrial on the basis of the cumulative effect of the State's alleged improper statements during its closing argument. Specifically, Vasquez contends that during its closing argument, the State repeatedly vouched for the truthfulness of IS and argued that Vasquez had "no answer" for the State's case.

We cannot reach the merits of this point because it is not preserved for appeal. While Vasquez moved for mistrial multiple times during the State's closing argument and received rulings on the motions, he failed to make an objection on the basis of the cumulative effect of the alleged improper arguments made by the State and failed to obtain a ruling on that objection. An appellant asserting a cumulative-error argument must show that there were

objections to the alleged errors individually *and* that a cumulative-error objection was made to the circuit court and a ruling obtained. *Tiarks v. State*, 2021 Ark. App. 325, at 12, 633 S.W.3d 788, 797. Accordingly, we affirm on this point.

Reversed and remanded.

ABRAMSON and GLADWIN, JJ., agree.

*John Wesley Hall* and *Samantha J. Carpenter*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Sr. Ass't Att'y Gen., for appellee.