Cite as 2025 Ark. 57

# SUPREME COURT OF ARKANSAS
**No.** CR-24-353

| | | |
|---|---|---|
| DEVON ROMICK | | **Opinion Delivered:** May 1, 2025 |
| | APPELLANT | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17CR-23-461] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE MARK MCCUNE, JUDGE |
| | APPELLEE | <u>AFFIRMED.</u> |

**NICHOLAS J. BRONNI, Associate Justice**

A jury convicted Devon Romick of raping MV, a five-year old minor victim, and sentenced him to life in prison. Romick appeals, arguing that the trial court improperly allowed a lay witness—the sexual assault nurse examiner (SANE nurse) who examined MV—to give expert testimony. We affirm.

## Facts and Procedural Background

The facts of this case are particularly disturbing and graphic, but some detail is necessary to understand the evidence presented below. It began on July 12, 2023, when MV's mother walked in on Romick sexually assaulting her daughter. That day MV's mother unexpectedly returned home and noticed her bedroom door was closed. Opening her bedroom door, she saw MV lying on the side of the bed with her knees bent up to her chest and her buttocks and feet at the edge of the bed. Standing over MV, Romick had his pants down and an erect penis in his hand. Romick originally told MV's mother that MV had walked in on him masturbating and that he had told MV to leave after MV asked "to

touch it." MV's mother said Romick was lying because he always locks the door when he "do[es] these things." Romick also told MV's mother that he knew he was going to go to jail. After his arrest, Romick told the police that his erection was caused by shaking his foot while he was smoking marijuana. He claimed MV was curious about it and that he told her she could not touch it and needed to leave the room.

After walking in on Romick, MV's mother took MV and left the house. As they were leaving, MV said, "Mommy, I don't want to make daddy happy no more." When asked what she meant by that, MV said that Romick would have her touch his penis and sometimes put it in her mouth. MV's mother immediately brought MV to the police station where MV's mother filled out a statement. The police told MV's mother to go to the Hamilton Center in Fort Smith, a facility that conducts interviews and physical examinations in child abuse and assault cases. At the Hamilton Center, MV and her mother were interviewed. Later that same day, Bethany Greene, a SANE nurse at the center, conducted a physical exam of MV.

Shortly after, the State charged Romick with rape. During the trial, MV's mother testified to the horrifying scene she witnessed when she opened her bedroom door. Later in the trial, MV testified to several sexual encounters with Romick before July 12, 2023. In graphic detail, MV recalled several instances of vaginal penetration and reciprocal oral sex with Romick. She explained where those attacks occurred, described Romick's genitals, and gave explicit, detailed testimony about the attacks. To supplement her testimony, MV was given drawings of a little girl's body and an adult male's body which resembled MV and Romick respectively. By circling the relevant body parts in each drawing, MV confirmed

2

the details of how Romick had repeatedly abused her; MV's circling also alluded to anal penetration.

The State also called Bethany Greene to testify about her two physical examinations of MV. Greene first detailed her training through the International Association of Forensic Nursing, which included attending lectures, conducting supervised forensic exams, and passing a formal exam. She also did a fellowship program where she shadowed several people, including a medical director. After her training, she worked at the Hamilton House where she examined MV.

Greene first examined MV on July 12, 2023, the same day MV's mother found Romick with MV in the bedroom, and conducted a follow-up exam two weeks later. Greene testified that the first exam was a full physical exam that included a vaginal and rectal examination. She discovered nothing remarkable during the vaginal exam. But she explained that a lack of findings was not unusual because only ten percent of children examined for sexual abuse will have an acute or healed finding. That is, only ten percent of child sexual-abuse victims show signs of injury, like tearing or swelling, or signs of healing, like scarring. She noted that MV's hymen remained intact but explained that it was a myth to think that negated the allegations of sexual abuse. Over objection, Greene also explained that a 2009 study supported her statement that a lack of physical evidence in abuse cases is not unusual, particularly when there is repetitive penetration and acute, aggressive attacks that do not allow time for healing. A police investigator on this case likewise testified—without objection—that in most child sexual-assault cases, there is a lack of physical evidence.

3

Greene also testified about the rectal exams she conducted. She noted that MV's anal dilation was outside the normal range—although she admitted that a reviewing medical board disagreed with those findings. She testified that MV's results differed from the 51 other exams that she had conducted. She explained that she had ended that first exam after MV became upset and began crying. Greene then explained that she conducted another examination two weeks later and that this time the results were closer to normal. And Greene testified that her work on this case made her reconsider her career.

Hearing these witnesses and weighing the evidence, the jury convicted Romick of raping MV and sentenced him to life without parole. Romick timely appeals his conviction.

**Discussion**

Romick's sole argument on appeal is that the circuit court erred when it allowed Greene, the SANE nurse, to give expert testimony without certifying her as an expert. He points to six statements that he says constituted improper lay witness testimony. Specifically, he challenges Greene's statements that: (1) the lack of physical evidence from MV's exam did not mean that MV was not a victim of sexual abuse because only ten percent of children examined for sexual abuse will have an acute or healed finding; (2) having an intact hymen does not discredit claims of sexual abuse; (3) a 2009 study supports Greene's statement that a lack of physical evidence in abuse cases is not unusual and is especially prevalent when there is repetitive penetration and acute, aggressive attacks; (4) her findings during the first rectal exam were abnormal; (5) MV became upset and started crying during the exam; and (6) this case made Greene reconsider her career.

4

Romick's claim fails for multiple reasons. First, Romick failed to contemporaneously object to all but one of the statements that he now asks us to review. Second, the only statement properly before us—Greene's testimony about the 2009 study—was permissible lay, not expert, testimony. And third, even if Greene's statements were somehow improper expert testimony, we would find any error in admitting them harmless. We therefore affirm Romick's conviction and sentence.

## Failure to Make a Contemporaneous Objection

As noted, Romick challenges six statements in Greene's testimony. We only review errors that have been preserved through a contemporaneous objection at trial. *See, e.g.*, *McClain v. State*, 361 Ark. 133, 136, 205 S.W.3d 123, 124 (2005) ("if a contemporaneous objection is not made during a jury trial, the proverbial bell will have been rung, and the jury prejudiced"). Here, Romick only objected to one of the challenged statements below, Greene's testimony about a 2009 study. So only that statement is properly preserved for our review, and we need not address the others. *See Crow v. State*, 306 Ark. 411, 416, 814 S.W.2d 909, 913 (1991). We consequently direct our analysis to Greene's statement about the 2009 study.

## Lay Witness Testimony Challenge

Greene's statement that a 2009 study supported her conclusions was proper lay opinion testimony, and we reject Romick's claims to the contrary. Arkansas Rule of Evidence 701 permits lay testimony "in the form of opinions or inferences" that are (1) "[r]ationally based on the" witness's perception and (2) "[h]elpful to a clear understanding of [the witness's] testimony or the determination of a fact in issue." Ark. R.

Evid. 701; *see also Navarro v. State*, 371 Ark. 179, 197, 264 S.W.3d 530, 543 (2007). That Rule is not one "against opinions, but is a rule that conditionally favors them." *Crow v. State*, 306 Ark. at 417, 814 S.W.2d at 913. Indeed, Rule 701 displaced the unwieldy common law rule requiring witnesses to testify in strictly factual terms and avoid giving opinions or drawing inferences. *See* 5 Weinstein's Federal Evidence § 701 App. 100. And it reflects the fact that "witnesses often find difficulty in expressing themselves in language which is not an opinion or conclusion." *Felty v. State*, 306 Ark. 634, 640, 816 S.W.2d 872, 875 (1991).

By contrast, different rules govern so-called expert opinion testimony. *See* Ark. R. Evid. 702, 703. Under those rules, a witness with specialized knowledge may offer opinions intended to "assist the trier of fact" based entirely on his or her "knowledge, skill, experience, training, or education." Ark. R. Evid. 702. So while lay testimony must be rationally related to the witness's observations, expert testimony may include opinions formed from facts the expert did not personally perceive. *See Felty*, 306 Ark. at 639, 816 S.W.2d at 875 (discussing firsthand knowledge requirement for lay witnesses); Ark. R. Evid. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing.").

Here, Romick argues that Greene improperly veered into expert territory when she testified that there are "many studies"—and, particularly, "one from 2009"—that show "if the children were repetitively being penetrated," it is "even less likely . . . that there was ever a healed injury to be seen in that area." That statement was part of Greene's broader testimony that most children she examines exhibit no physical evidence of abuse and that a

6

lack of such evidence does not discredit an abuse claim. The trial court concluded that Greene's statement about the 2009 study was permissible under Rule 701.

We review decisions permitting lay opinion testimony for an abuse of discretion. *See Bragg v. State*, 2023 Ark. 66, at 7, 663 S.W.3d 375, 380 (citing *Moore v. State*, 362 Ark. 70, 75, 207 S.W.3d 493, 497 (2005)). Applying that standard, we find no abuse of discretion. Instead, we conclude that Greene's testimony meets Rule 701's standard for lay testimony because it was both rationally based on her perception and helpful.

1. Start with the perception requirement. Rule 701 requires that lay opinion testimony be "[r]ationally based on the" witness's perception. Perception requires some "firsthand knowledge or observation." *Felty*, 306 Ark. at 639, 816 S.W.2d at 875. But it "is not limited to what is actually seen." *Marks v. State*, 375 Ark. 265, 271, 289 S.W.3d 923, 928 (2008). Rather, perception is a broader concept and encompasses things a witness is aware of or realizes "based on physical sensation or experience; appreciation or cognition." *Id.* (citing *Black's Law Dictionary* 1172 (8th ed. 2004)). Consistent with that definition, we have previously held that Rule 701 permits lay witnesses to offer opinions and draw inferences about an event based on his or her prior experience. *See Flowers v. State*, 373 Ark. 127, 132, 282 S.W.3d 767, 771 (2008) (lay witnesses may provide opinions that are rationally based on their "experience, . . . training, and personal observation"); *Russell v. State*, 306 Ark. 436, 440, 815 S.W.2d 929, 932 (1991) ("Lay witnesses are permitted to give their opinion as to the cause of death or other physical condition if the witness is qualified by experience and observation with regard to the subject matter."). Indeed, even if some debate remains about the breadth of the term "perception" in the abstract, Rule 701's

7

language plainly says that lay testimony is permissible where it is "rationally based on the *perception of the witness*." Ark. R. Evid. 701 (emphasis added).

So, for instance, we have long held that firsthand observers with specialized knowledge—such as police officers, investigators, or treating medical professionals—may give lay opinions where they have laid the proper foundation for their knowledge and experience. *See Bush v. State*, 2024 Ark. 77, at 9, 687 S.W.3d 570, 575 (listing cases where our court has allowed police officers and investigators to give lay testimony based on their training and experience); *Navarro*, 371 Ark. at 197, 264 S.W.3d 530 at 543 (permitting lay testimony by investigator that the lack of blood on a screwdriver was not unusual because even objects that penetrate a body or are touched may not have blood or fingerprints on them); *Russell*, 306 Ark. at 440–41, 815 S.W.2d at 931–32 (lay testimony of an emergency medical technician with experience in puncture wounds permitted to opine that victim's wounds were caused by a square-headed or a Phillips head screwdriver); *Gruzen v. State*, 276 Ark. 149, 155, 634 S.W.2d 92, 95 (1982) (lay testimony about the length of time that a body had been in a pond permitted based "on [witness's] past experience with drowned persons as a police investigator"); *Arkansas State Highway Comm'n v. First Pyramid Life Ins. Co. of Am.*, 269 Ark. 278, 284–85, 602 S.W.2d 609, 613 (1980) (allowing lay opinion from engineer about why he recommended location for a sewerage treatment plant on a property).

The circuit court followed the same approach here, permitting Greene to offer lay opinions based on both her demonstrated experience and training as a SANE nurse and what she directly observed in examining MV. Like other experienced witnesses, Greene

did not leave behind her knowledge and experience examining children when she took the stand. Instead, it is that knowledge, training, and experience that allowed her to look for certain things in a forensic examination, make inferences, and draw conclusions. She personally examined MV twice and testified as to what someone in her position would conclude from what she observed. Thus, her testimony was based on her perception, and the circuit court did not err in concluding otherwise.

In response, Romick argues that lay opinions must be based upon common, ordinary knowledge, not specialized training, and that Greene's testimony went beyond ordinary knowledge. To be sure, as Romick notes, we have frequently framed Rule 701 as a provision limiting lay testimony to opinions and inferences "that a normal person would form on the basis of the facts observed." *Marks*, 375 Ark. 265, 270, 289 S.W.3d 923, 927; *see also Carton v. Missouri Pacific Railroad Co.*, 303 Ark. 568, 571–72, 798 S.W.2d 674, 675 (1990). Moreover, focusing on that normal person language, our court of appeals has held that lay witnesses may not offer opinions and inferences "based on their training, experience, and observations" but only those based on knowledge within "the common experience of an average juror." *Vasquez v. State*, 2022 Ark. App. 328, at 7-8, 652 S.W.3d 586, 590; *accord id*. at 6, 652 S.W.3d at 590 (lay opinion and inferences must be "based on observations of everyday occurrences or matters within the common experience of *most* persons" (emphasis added)). Under that standard, our court of appeals has held that testimony materially identical to Greene's from a SANE nurse about the frequency of normal findings in child sexual-assault exams "fall[s] outside the parameters of Rule 701." *Id*.

That holding and the court of appeals' approach cannot be squared with either Rule 701's text or our case law. Perception—the word Rule 701 uses—necessarily varies based on experience, knowledge, and training. *See supra* at 7. That is, someone with experience may well perceive things differently than someone without experience, and nothing in Rule 701 requires courts to limit a witness's perception to what some hypothetical ordinary person might perceive, infer, or conclude. *See Hill v. State*, 2018 Ark. 194, at 10–11, 546 S.W.3d 483, 489 (permitting lay testimony from a narcotics investigator that the defendant's texts included drug terminology). To the contrary, as explained above, Rule 701's text says that admissibility depends on whether the opinion is rationally based on the witness's perception, not some hypothetical witness. And while we have frequently used the phrase "normal person" to describe the relevant standard, we have not used that phrase in isolation—as the court of appeals has—but in the context of a normal person with the witness's knowledge, experience, and training. *See Russell*, 306 Ark. at 441, 815 S.W.2d at 932 ("the opinion was one which a normal person who had previously seen puncture wounds caused by screwdrivers would form"); *see also Robinson v. State*, 353 Ark. 372, 382–83, 108 S.W.3d 622, 627–28 (2003) (using his experience as a homicide investigator, a lay witness could properly testify that there was "usually very little blood loss" when someone is shot in the head because a headshot instantly kills a person and stops the heart from pumping blood).

Further, the fact that Greene could have been qualified as an expert with her experience, knowledge, and training does not disqualify her from giving lay opinion testimony. Comparing our rule with the more restrictive federal rule governing lay opinions

10

illustrates the point. Unlike our rule, current Federal Rule of Evidence 701 expressly excludes lay opinions "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). That limitation was added to the Federal Rules of Evidence in 2000, and some other states have subsequently revised their rules to include that limitation. *See* Advisory Committee's Notes to Federal Rule 701; N.M. R. Evid. 11-701(c) (adopting federal revision in 2012); N.H. R. Evid. 701(c) (adopting federal revision in 2017).

But we have never adopted that restriction, *see* Ark. R. Evid. 701 (requiring testimony be helpful and rational), recognizing—as federal courts have found to their chagrin—that the line between perception and expertise can be difficult to draw.[1] Instead, under our rule, a trial court does not abuse its discretion in permitting a witness to offer lay opinion testimony simply because the witness could have been qualified as an expert. *See Ferrell v. State*, 305 Ark 511, 519-20, 810 S.W.2d 29, 33 (1991) (finding no abuse of discretion in admitting lay opinion of a sporting goods store owner and former Marine marksmanship instructor testifying about the difference between two guns when he could have been qualified as an expert). So witnesses are not required to check their knowledge, training, and experience at the courthouse doors. To the extent the court of appeals has

---

[1] *See Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1013–14 (8th Cir. 2008) (permitting lay opinion testimony from railroad employees with experience in the railroad billboard industry on billboard application, approval, and internal review process); *United States v. Habibi*, 783 F.3d 1, 5 (1st Cir. 2015) (permitting FBI agent to testify that detectible DNA is not left every time someone touches an object); *with United States v. Naranjo-Rosario*, 871 F.3d 86, 96–97 (1st Cir. 2017) (considering federal agent dog handler's testimony about the drug-sniffing dog's reactions and what alerts from the dog meant in the investigation expert testimony even though it was based on his training and experience).

suggested otherwise or has relied on cases applying the more restrictive federal approach to reach that conclusion, its cases—including *Vasquez* on which Romick relies—are overruled.

2. Rule 701's other requirement is that lay opinion testimony be helpful. While the perception requirement can be a close call, the second limitation on lay testimony is more straightforward. It merely requires opinion to be helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. Ark. R. Evid. 701(b).

Here, Greene's testimony was both helpful to clearly understanding the rest of her testimony and the central fact at issue, whether MV was raped. That the lack of physical findings in child rape cases is unsurprising to a SANE nurse puts Greene's testimony in context. It explained why she did not stop her examination after determining MV's vaginal area showed no tearing, swelling, scarring, or healing, and why she conducted another examination two weeks later to see if there was healing in the rectal area. It also alerted the jury to the fact that a lack of findings in certain areas was not unusual even in cases where sexual abuse definitively occurred. So as the circuit court concluded, Greene's testimony easily satisfies Rule 701's helpfulness requirement.

★   ★   ★

In sum, we hold that witnesses are not required to leave their knowledge, training, and experience at the courthouse door. Instead, Rule 701 permits witnesses to offer helpful lay opinions and inferences based upon their perceptions—informed by their demonstrated knowledge, training, and experience. And opponents are free to challenge that testimony on cross-examination. Applying that standard, the circuit court did not abuse its discretion

12

in permitting Greene to offer lay opinion testimony about the lack of physical evidence in abuse cases or reference the 2009 study.

Prejudice

Even if the trial court had abused its discretion in admitting Greene's testimony, any error would have been harmless because, in the context of this case, Romick cannot demonstrate that Greene's testimony prejudiced him. *Wright v. State*, 368 Ark. 629, 638, 249 S.W.3d 133, 140 (2007); *see also Leach v. State*, 2012 Ark. 179, at 17, 402 S.W.3d 517, 528.

To start, by the time Romick objected to Greene's testimony about the 2009 study, Greene had already testified that a lack of findings was not unusual. The 2009 study was merely consistent with that testimony, so it is hard to see how Romick could claim the mention of that study was prejudicial—let alone so prejudicial that it could warrant reversal. Moreover, even if Romick could surmount that problem, Greene's discussion of the 2009 study was, at most, cumulative and non-prejudicial in light of the investigator's similar, unchallenged testimony, that physical findings are often absent in child abuse cases. *Wright v. State*, 368 Ark. 629, 638, 249 S.W.3d 133, 140 (2007) ("[P]rejudice is not presumed and . . . no prejudice results where the evidence erroneously admitted was merely cumulative.").

More importantly, even if Romick could overcome those hurdles, it still would not make a difference because Greene's and the investigator's testimony pales in comparison to the other significant evidence of Romick's guilt. *See Johnson v. State*, 2014 Ark. 110, at 8, 431 S.W.2d 895, 899 ("Even when a circuit court errs in admitting evidence, we may declare the error harmless and affirm if the evidence of guilt is overwhelming and the error

13

is slight."). MV's testimony in this case was graphic and horrifying, recounting multiple interactions, and including details far beyond what one would expect from a five-year old child. MV's mother also testified about catching Romick in her bedroom with his penis out, standing over MV, and MV's statement about not wanting to make Romick happy anymore. And the jury heard about Romick's inability to keep his story straight—giving conflicting accounts to the police and MV's mother about what he was doing—and admitting to MV's mother that he knew he was going to jail because she had caught him.

All the jury needed to find to convict Romick of rape was that there was one instance of oral, vaginal, or anal sex between Romick and MV. *See* Ark. Code Ann. § 5–14–103(a)(3)(A); § 5–14–101 (defining "deviate sexual activity" under the rape statute to include oral, vaginal, and anal penetration, however slight); *Doucoure v. State*, 2024 Ark. 162, at 4, 698 S.W.3d 643, 645 ("The testimony of a rape victim, standing alone, is sufficient to support a conviction [if it meets the statutory elements]."). In light of the evidence presented—including the portions of Greene's testimony that were not objected to—any error in admitting Greene's testimony would be harmless. *See Johnson v. State*, 2014 Ark. 110, at 8, 431 S.W.3d 895, 899.

4-3(a) Review

Because Romick was sentenced to life imprisonment, Ark. Sup. Ct. R. 4-3(a) applies. Accordingly, we reviewed the record for all rulings adverse to Romick on objections, motions, and requests made by either party. No prejudicial error exists here.

Affirmed.

BAKER, C.J., and HUDSON, J., concur.

**KAREN R. BAKER, Chief Justice, concurring.** Although I agree with the majority that Romick's conviction should be affirmed, I write separately because I would employ a narrower analysis in reaching that conclusion.

Challenges to the admissibility of evidence are left to the sound discretion of the circuit court, and a circuit judge's ruling on these matters will not be reversed absent an abuse of discretion. *Dixon v. State*, 2011 Ark. 450, at 11, 385 S.W.3d 164, 173. Moreover, we do not presume that prejudice results from an evidentiary error, and thus, we will not reverse a circuit court's ruling unless the appellant demonstrates prejudice. *Id*. Here, regardless of whether the circuit court erred in allowing Greene's testimony, reversal is not warranted because Romick cannot demonstrate prejudice.

Evidence that is merely cumulative or repetitious of other evidence admitted without objection cannot be prejudicial. *Conte v. State*, 2015 Ark. 220, at 33, 463 S.W.3d 686, 706. On direct examination, Greene testified that normal findings resulting from a sexual-assault examination "[do not] negate anything with children or sexual abuse. Only 10 percent of children examined for sexual abuse actually will have some type of acute or healed finding because of how our membranes work and heal in those areas." Romick did not object. When asked whether a lack of physical findings during such an examination was abnormal, Greene responded, "Not at all . . . especially with children." Romick did not object. Greene agreed that the fact that MV's hymen was still intact did not necessarily negate the sexual-assault allegations and explained that the idea that the hymen would somehow be broken is "kind of a myth[,]" and that "we have studies that show pregnant teenagers with intact hymens[.]" Romick did not object. Greene testified that in her experience examining child

15

sexual-assault victims, the majority of those children had no signs of physical injury. Romick did not object. When asked whether a lack of physical injury discredits whether a victim was sexually assaulted or raped, the following discussion took place:

GREENE:     Not at all. There's many studies that support that, and there's also -- there's a new one from 2009 . . . where if the children were repetitively being penetrated, there's even less likely chances that there was ever a healed injury to be seen in that area. So the injuries are usually more --

ROMICK:     Your Honor --

GREENE:     -- related to acute, aggressive attacks of some sort.

ROMICK:     -- may we approach?

It was at this time that Romick objected, arguing that Greene's testimony was improper because she had not been qualified as an expert witness. However, as the foregoing testimony illustrates, Greene had already testified at length about the importance, or lack thereof, of physical findings during a sexual-assault examination by the time Romick objected. Further, as the majority correctly notes, an investigator offered similar testimony, without objection, that there is usually no physical evidence available in child sexual-assault cases. Consequently, the admission of Greene's testimony concerning the 2009 study was cumulative to earlier testimony that Romick did not object to, and Romick therefore cannot demonstrate prejudice.

I would affirm Romick's conviction on this basis. Accordingly, I concur with the majority's disposition.

HUDSON, J., joins.

*Lisa-Marie Norris*, for appellant.
*Tim Griffin*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.

16